[Nos. 27892-4-I; 27893-2-I.   Division One.   August 17, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS JOHN BROWNING, ET AL, *Appellants.*

---

94

*Jeffrey Steinborn* and *Kenneth Friedman,* for appellants.

*Seth R. Dawson, Prosecuting Attorney,* and *David Thiele, Deputy,* for respondent.

BAKER, J. — This is a search and seizure case in which a building inspector inadvertently discovered marijuana plants in the Brownings' basement during a final housing inspection. We reverse the Brownings' convictions for possession of a controlled substance with intent to deliver because the inspector's entry into the house was unlawful.

### FACTUAL BACKGROUND
A building inspector arrived at the Brownings' house to perform a final housing inspection. When the inspector arrived, he observed Michele Browning entering the garage. The inspector did not present any credentials; however, Ms.

Browning recognized him as an inspector from a prior meeting. The two engaged in conversation, the content of which is disputed.

The inspector testified at the suppression hearing that he informed Browning that a final inspection had been requested. According to the inspector, Browning told him she was taking care of a sick relative and then went back into the house. The inspector stated that Browning never told him he could not complete the inspection.

Browning testified that she met the inspector in the driveway and asked him why he was there; she thought the final inspection had already been completed. According to Browning, she asked the inspector to come back when her husband was home. When the inspector refused, she told him to wait in the driveway while she looked for requested paperwork and contacted her husband.

In any event, it is undisputed that when Browning went into the house, the inspector began inspecting the premises. During the inspection, he observed unauthorized construction which led to a room concealing numerous marijuana plants. His observations were reported to the police, who obtained a search warrant.

The Brownings were charged with possession of a controlled substance with intent to manufacture or deliver. The trial court denied a motion to suppress the evidence brought on grounds that the inspector entered the premises unlawfully. The Brownings stipulated to facts sufficient to establish guilt, and appealed.

### Did the Inspection Constitute a Search?

■ The protections of the Fourth Amendment and Const. art. 1, § 7 extend to administrative or regulatory searches. *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). The State argues that the inspection did not constitute a search under the federal or state constitutions because the marijuana plants were observed in plain view, citing *State v. Vonhof*, 51 Wn. App. 33, 751 P.2d

1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989) and *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981).

Both *Vonhof* and *Seagull* involved observations from points within the curtilage of the residences but not within areas deemed to have a reasonable expectation of privacy. Accordingly, the courts held that the observation of incriminating evidence from these points did not constitute a search. These cases thus involve the open view doctrine and stand for the proposition that there is no legitimate expectation of privacy "in those areas of the curtilage that are impliedly open to the public." Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411, 430 (1988); *Seagull*, 95 Wn.2d at 902; *see also State v. Ferro*, 64 Wn. App. 181, 824 P.2d 500, *review denied*, 119 Wn.2d 1005 (1992).

■ ■ In this case, the inspector entered the residence itself, an area within which there was an unquestionable expectation of privacy. Thus, this case involves the "plain view" doctrine, not the "open view" doctrine discussed in *Vonhof* and *Seagull*. Our Supreme Court has explained the difference as follows:

> In the "plain view" situation "the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy." The officer has already intruded, and, if his intrusion is justified, the objects in plain view, sighted inadvertently, will be admissible.
>
> In the "open view" situation, however, the observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public. The object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution.

(Citations omitted.) *Seagull*, 95 Wn.2d at 901-02 (quoting *State v. Kaaheena*, 59 Hawaii 23, 28-29, 575 P.2d 462 (1978)). Therefore, because the observation of incriminating evidence in this case was from a constitutionally protected area, we hold that the inspection constituted a search under the federal and state constitutions.

DID THE INSPECTOR ENTER THE RESIDENCE LAWFULLY?

The Brownings assert that the building inspector entered the residence unlawfully because Browning did not consent to the entry and the inspector did not present his credentials or request entry as required by the Uniform Building Code (UBC). We agree.

In *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968), four policemen announced that they had a warrant to search a house, and the owner responded "go ahead". At trial, no warrant was produced, but the prosecutor argued that the search was permissible on grounds that a valid consent to the search had been given. The Supreme Court reversed the appellant's conviction and stated:

> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

(Footnote omitted.) *Bumper*, 391 U.S. at 548-49.

The claim of lawful authority referred to in *Bumper* has not been limited to situations in which officers claim to have a search warrant. 3 W. LaFave, *Search and Seizure* § 8.2(a), at 179 (2d ed. 1987). "The claim of such a right, though not expressly stated, is implicit when the police, instead of asking for permission to make the search, say that they have come to search or that they are going to search." (Footnotes omitted.) *Search and Seizure* § 8.2(a), at 179-80.

In *United States v. Most*, 876 F.2d 191 (D.C. Cir. 1989), the Court of Appeals rejected the government's argument that acquiescence or nonresistance may support an inference of implied consent. The court stated, "[i]t is clear . . . that for constitutional purposes nonresistance may not be equated with consent." *Most*, 876 F.2d at 199. *See also Patzner v. Burkett*, 779 F.2d 1363, 1369 (8th Cir. 1985) (proof that a person merely acquiesced does not support a presumption that consent was given); *United States v. Gonzales*, 842 F.2d

748, 754 (5th Cir. 1988) (acquiescence cannot substitute for free consent), *overruled on other grounds in United States v. Hurtado,* 905 F.2d 74 (5th Cir. 1990).

The State relies on two Washington cases to support its argument that the inspector lawfully entered the residence because Ms. Browning never expressly refused him entry. We do not find these cases to be persuasive in this context.

The first case involved a domestic violence situation in which one of the occupants was known to the police to have a violent temper. *State v. Raines,* 55 Wn. App. 459, 778 P.2d 538 (1989), *review denied,* 113 Wn.2d 1036 (1990). The other occupant, the suspected victim, affirmatively gestured to the officers to enter the apartment after the officers requested entry. Under these circumstances, we concluded that the affirmative act of stepping aside to allow the officers' entry amounted to more than mere acquiescence and constituted an implied waiver of the occupant's right to refuse entry. *Raines,* 55 Wn. App. at 462-63.

The second case involved a narcotics sale to an undercover agent. *State v. Sabbott,* 16 Wn. App. 929, 561 P.2d 212 (1977). In that case, there was no claim of lawful authority followed by acquiescence. Thus, we do not find the cited dicta in that case to be persuasive.

■ Because the State's evidence shows no more than acquiescence to a claim of authority, we hold that the State has failed to satisfy its burden of proving that Ms. Browning freely and voluntarily consented to the inspector's entry. "The opportunity to consent to an inspector's entry or perhaps arrange a more convenient time for inspection will go far toward enabling a citizen to keep private the 'private affairs' she conducts in her home." *King Cy. v. Primeau,* 98 Wn.2d 321, 331, 654 P.2d 1199 (1982) (Utter, J., concurring in part, dissenting in part).

Furthermore, the UBC expressly requires a building inspector to request entry. The UBC states:

> **Right of Entry.** Whenever necessary to make an inspection to enforce any of the provisions of this code, or whenever the building official or his authorized representative has

reasonable cause to believe that there exists in any building or upon any premises any condition or code violation which makes such building or premises unsafe, dangerous or hazardous, the building official or his authorized representative may enter such building or premises at all reasonable times to inspect the same or to perform any duty imposed upon the building official by this code, *provided that if such building or premises be occupied, he shall first present proper credentials and request entry*; and if such building or premises be unoccupied, he shall first make a reasonable effort to locate the owner or other persons having charge or control of the building or premises and request entry. If such entry is refused, the building official or his authorized representative shall have recourse to every remedy provided by law to secure entry.

(Italics ours.) UBC § 202(c) (1988). No such request was made in this case. The facts cannot support a 2-tiered inference that a request was made and consent given in response thereto. Thus, we hold that the inspector did not enter the residence lawfully and the Brownings' motion to suppress the evidence should have been granted.

### APPARENT AUTHORITY TO CONSENT

■ The State alternatively argues that the contractor's inspection request constituted third party consent under the doctrine of apparent authority. However, the evidence presented is insufficient to establish who requested the inspection. "Cases on appeal are decided only on evidence in the record." *State v. Leach*, 113 Wn.2d 679, 693, 782 P.2d 552 (1989).

Even if we were to assume that the contractor requested the inspection, however, this argument would fail. Under the doctrine of apparent authority, if the inspector reasonably believed that the contractor had the authority to authorize the search, then the search would be valid notwithstanding a lack of actual authority. *See United States v. Yarbrough*, 852 F.2d 1522 (9th Cir.), *cert. denied*, 488 U.S. 866 (1988); *Schikora v. State*, 652 P.2d 473 (Alaska Ct. App. 1982).

In this case, one of the occupants of the house was home when the inspector arrived. Therefore, even if the inspector

believed that the contractor had the authority to consent, he was required under section 202(c) of the UBC to request entry from the occupant.

█ Moreover:

> It is fundamental that the doctrine which recognizes the validity of a third party's consent to a search must be applied guardedly to prevent erosion of the protection of the Fourth Amendment, since it makes no requirement of the existence of probable cause for the search and does not constitute an exception based on necessity.

*State v. Smith*, 88 Wn.2d 127, 156, 559 P.2d 970 (Horowitz, J., dissenting) (quoting *United States ex rel. Cabey v. Mazurkiewicz*, 431 F.2d 839, 843 (3d Cir. 1970), *cert. denied*, 434 U.S. 876 (1977)). The United States Supreme Court has similarly stated: "Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority.' " *Stoner v. California*, 376 U.S. 483, 488, 11 L. Ed. 2d 856, 84 S. Ct. 889 (1964).

Accordingly, even if we were to reach this issue, we would hold that the inspection could not be justified on the basis of apparent authority.

Reversed.

WEBSTER, A.C.J., concurs.

AGID, J. (concurring) — I concur in the result reached by the majority because the State did not meet its burden of establishing that the building inspector complied with the requirement of the Uniform Building Code § 202(c) (1988) that he obtain the occupant's permission before entering to do an inspection. The trial court did not find either that Ms. Browning consented to his entry or that her testimony to the contrary was not credible. Because something more than apparent acquiescence is necessary to comply with the Uniform Building Code (UBC) the evidence was properly

suppressed. Similarly, the State failed to meet its burden of proving that the contractor had requested the inspection and cannot rely on the actual or apparent authority derived from section 305(c) of the code to justify the inspector's entry.

The remainder of the opinion is dicta. There may be some unfortunate consequences flowing from the discussions of both administrative searches and apparent authority, and I believe both should be left to another day.

Section 305(c) of the UBC (1988) provides:

> It shall be the *duty* of *the person doing the work* authorized by a permit to notify the building official that such work is ready for inspection. . . .
> It shall be the duty of the person requesting any inspections required by this code to provide access to and means for inspection of such work.

As a practical matter, these regulations place on the contractor, not the property owner, the responsibility for assuring compliance with the inspection requirements of the code. The contractor is the owner's *actual* agent for inspection purposes, and it ignores reality to decide that the contractor does not have even apparent authority to consent to an inspection under these circumstances.

UBC § 305(d) requires "a final inspection and approval of all buildings and structures when completed and ready for occupancy and use." Occupancy prior to final inspection is not authorized by the code. Thus under normal circumstances, it will be only the contractor who is in a position to permit entry to the premises. Since the owner's occupancy of the house prior to final inspection was in apparent violation of the UBC and it is the duty of the contractor to call and to arrange access for the final inspection, it unnecessarily confuses the law to say that the UBC requires the owner's permission to enter to perform a final inspection.

It is also unnecessary to characterize this as an administrative "search" under *Camara v. Municipal Court*, 387 U.S.

523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). As the *Camara* Court itself recognized,

> [B]ecause the inspections are neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of the urban citizen's privacy.

387 U.S. at 537.

This inspection was even more remote from the traditional notion of a "search" than were those involved in *Camara* where inspectors came unbidden to residential premises on a random basis to determine whether they were in compliance with health and safety codes. Under the UBC, construction inspections are requested by the contractor and are not random. They are done at specified times during the construction to enable the contractor to move on to the next stage of the project after the responsible agency has determined that the previous stage complies with the code and the residence will be safe for the occupants of the building when it is completed. *See, e.g.*, UBC § 305(e) (foundation, concrete slab, frame, and lath inspections required prior to final inspection and before covering the work). While the building inspector is a public official, he comes on the premises at the request of the permit applicant to look at construction, not to search for evidence of a crime. There is no basis for confusing the issue by characterizing inspections of this type as "searches".

This case could and should be decided solely on the State's failure to prove compliance with the UBC requirements, leaving questions of actual and apparent authority and administrative searches for a case presenting facts on which we can decide them.