202 P.3d 309 (2008)
Robert BONNEVILLE a/k/a Will Ellwanger, Appellant,
v.
PIERCE COUNTY, a municipal corporation; Mark Lupino, John Doe, Marcia Greeson, individuals, Respondents.
No. 36895-1-II.
Court of Appeals of Washington, Division 2.
November 4, 2008.
Publication Ordered February 10, 2009.
*311 Joseph Philip Tall, Attorney at Law, Seattle, WA, for Appellant.
Gerald Allen Horne, Attorney at Law, Ronald Lamar Williams, Pierce Co. Pros. Office, Tacoma, WA, for Respondents.
ARMSTRONG, J.
¶1 Robert Bonneville[1] appeals a summary judgment in favor of Pierce County on his 42 U.S.C. section 1983 claims against the County and a number of its agents. Bonneville contends that the trial court should have granted his motion to continue the summary judgment hearing so that his recently hired attorney could prepare for it. He also argues that there are issues of material fact as to (1) whether he voluntarily consented to an inspection by county officials during which they learned that Bonneville was violating his conditional use permit to operate a business out of his home and (2) whether the County violated his due process rights. Because Bonneville has not provided a record of the arguments and the trial court's ruling on the continuance motion, we are unable to address the issue. In addition, we find no issue of material fact as to whether the County violated Bonneville's constitutional rights. We affirm.

FACTS
¶2 Bonneville owns property in Pierce County in an area that was zoned for rural use in 1994. In 2004, Bonneville applied for a conditional use permit (Cottage Industries II) to operate an appraisal business out of the single family home located on his property, a business he has been operating since at least 1999.
¶3 At the permit hearing on May 13, 2004, the County expressed concern that Bonneville would not comply with conditional use *312 requirements because he had "shown that he does not follow directives" after years of dealing with the County. 1 Clerk's Papers (CP) at 53. Before the hearing, Pierce County staff asked the hearing examiner to condition approval of Bonneville's permit on (1) allowing the County to monitor Bonneville's property and (2) Bonneville signing a right of entry agreement. At the hearing, planning department employee Marcia Greeson again asked the examiner to require Bonneville to sign a right of entry agreement allowing the staff access to Bonneville's property.
¶4 Before the hearing examiner made his decision, Bonneville recommended that enforcement issues could be resolved if he permitted "somebody from the county" to "come through there at any time, count heads ... and agree on the space." 1 CP at 120. He later confirmed that someone from the county was "welcome to come there any time, walk through the building...." 1 CP at 122. He also agreed to a "pattern where somebody comes through" once a month or once a week and to meet a schedule if they "come up with a schedule of inspections, be it routine or random...." 1 CP at 131, 143.
¶5 The hearing examiner approved Bonneville's conditional use permit subject to numerous conditions, including that he allow "Pierce County Staff to monitor the site to make sure that all conditions of approval are being adhered to[]...." and that he permit "unlimited and unfettered" access to his property for inspection and monitoring purposes. 1 CP at 55. The hearing examiner asserted jurisdiction over the matter for a period of three years "to insure that all conditions of approval are satisfied." 1 CP at 55. Bonneville did not appeal the decision.
¶6 Bonneville signed a Pierce County Right of Entry Agreement on February 22, 2004, which an attorney, Fred Hetter, notarized.[2] The notary certified that Bonneville "acknowledged that he[] signed this instrument and acknowledged it to be his[] free and voluntary act for the uses and purposes mentioned in the instrument." 1 CP at 182. Bonneville subsequently prepared a Right of Entry Agreement on August 12, 2004, authorizing the County to enter his property for the purposes of monitoring the permit conditions.
¶7 The County inspected Bonneville's permit compliance three times after the conditional use decision. On November 22, 2006,[3] Greeson, Mark Luppino, and Pierce County Sheriff Dan Wullick arrived at Bonneville's home office without a warrant. The sheriff escorted the county staff because Bonneville had been argumentative during prior visits. Bonneville asserts that Luppino was "clad in bullet proof armor" and that Deputy Wullick was armed at the time of the inspection. Br. of Appellant at 3. Greeson knocked and asked Bonneville for permission to inspect his property. After initially refusing entry to the staff, Bonneville invited them into the house. Bonneville admitted that he "acquiesced" to Greeson's "demand" to enter his home. 2 CP at 372.
¶8 During the inspection, the staff observed that Bonneville was violating several conditional use permit conditions. Greeson then initiated proceedings to revoke Bonneville's permit on February 1, 2007. On April 15, 2007, the hearing examiner revoked his permit after finding by a preponderance of the evidence that Bonneville violated three approval conditions. One violation included Bonneville's failure to comply with the "unlimited and unfettered" access condition because of his "abusive and hostile" behavior toward those who came to his property. 3 CP at 414.
¶9 On December 28, 2006, Bonneville sued the County under 42 U.S.C. sections 1983 and 1985(3). On July 23, 2007, the County moved for summary judgment. In support of its motion, the County submitted a staff report prepared by the County along with *313 Luppino's declaration. Bonneville, representing himself, requested a continuance on the motion hearing on September 7, 2007, because his mother was ill and he needed more time to respond. The trial court granted the continuance but warned Bonneville that he should file his response within the following week. Bonneville appeared with counsel on September 21, 2007, and requested a second continuance so that his attorney could prepare for the hearing. The September 21, 2007 trial transcript, however, does not include the motion for a continuance, only an excerpt of the trial court's ruling on the motion for summary judgment.
¶10 According to the unofficial transcript attached to the County's brief, Bonneville's counsel advised the court that he would appear on behalf of Bonneville, that he had first seen Bonneville on the matter only the day before the hearing, and that he needed time to prepare for the motion. In the same transcript, the trial court denied the motion, explaining that Bonneville had already received one continuance, that he had had ample time to retain an attorney, and that the court believed he was simply delaying the case.
¶11 The court granted the County's motion for summary judgment after finding no genuine issues of material fact.[4] It determined that "there is nothing in the record" to suggest Bonneville's consent to the inspection was coerced. Report of Proceedings (RP) (Sept. 21, 2007) at 5. It also found that he was afforded due process at the hearing at which his permit was granted and at the revocation hearing. Bonneville moved for reconsideration, which the trial court denied. This appeal followed.

ANALYSIS

I. Continuance
¶12 Bonneville contends that the trial court should have granted him a second continuance. We review the trial court's ruling on a motion to continue for an abuse of discretion. State v. Downing, 151 Wash.2d 265, 272, 87 P.3d 1169 (2004). But an appellant must provide the record from which his or her assignment of error arose so that we can determine whether discretion was abused. RAP 9.2(b). Here, Bonneville provides no part of the official record of the motion or the trial court's ruling. The unofficial transcript attached to the County's brief is incomplete, was never filed with the trial court, and does not meet RAP standards. See RAP 10.3(a)(8). Even if we consider the partial unofficial record, it shows that the trial court acted well within its discretion in denying Bonneville a second continuance. Bonneville had ample time to retain counsel before the summary judgment motion. He failed to ask for a second continuance immediately after the first continuance expired. He also offered no explanation for retaining an attorney only the day before the hearing. Under these circumstances, the trial court did not abuse its discretion in denying Bonneville more time.

II. Evidence Considered in Summary Judgment Ruling
¶ 13 Bonneville next argues that the trial court erred in considering the staff report and Luppino's declaration in its summary judgment ruling because this evidence contains hearsay and is not based on personal knowledge.
¶14 Civil Rule 56(e) states, in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A party may object to an affidavit filed in support of a motion for summary judgment if it sets forth facts that would not be admissible in evidence. Smith v. Showalter, 47 Wash.App. 245, 248, 734 P.2d 928 (1987) (citing State v. The (1972) Dan Evans Campaign Comm., 86 Wash.2d 503, 506, 546 P.2d 75 (1976)). If a party fails to object or bring a motion to strike deficiencies in affidavits or other documents in support of a motion for summary judgment, the *314 party waives any defects. Smith, 47 Wash. App. at 248, 734 P.2d 928 (citing Lamon v. McDonnell Douglas, Corp., 91 Wash.2d 345, 352, 588 P.2d 1346 (1979); Greer v. Nw. Nat'l Ins. Co., 36 Wash.App. 330, 338, 674 P.2d 1257 (1984)).
¶15 Nothing in the record before us shows that Bonneville raised the hearsay or personal knowledge issues before the trial court. Nor does his motion for reconsideration raise these issues. Consequently, Bonneville waived any objection to the evidence provided by the County in support of its motion, and we decline to review this issue.

III. 42 U.S.C. § 1983 Claims

A. Summary Judgment Standard of Review

¶16 We review a summary judgment order de novo. York v. Wahkiakum School Dist. No. 200, 163 Wash.2d 297, 302, 178 P.3d 995 (2008) (citing W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 607, 998 P.2d 884 (2000)). In doing so, we consider all facts and all reasonable inferences from them in the light most favorable to the nonmoving party. Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005) (citing Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982)). A court may grant summary judgment only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).
¶17 After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficient to rebut the moving party's contentions and demonstrate that material issues of fact remain. Seven Gables Co. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986) (citing Dwinell's Cent. Neon v. Cosmopolitan Chinook Hotel, 21 Wash.App. 929, 587 P.2d 191 (1978)). The nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. The trial court should grant the motion only if reasonable persons could reach but one conclusion. Wilson, 98 Wash.2d at 437, 656 P.2d 1030 (citing Morris v. McNicol, 83 Wash.2d 491, 494-95, 519 P.2d 7 (1974)). We agree with the trial court that reasonable persons could conclude only that the County did not violate Bonneville's constitutional rights. Thus, the trial court properly granted summary judgment on Bonneville's 42 U.S.C. section 1983 and conspiracy claims.

B. 42 U.S.C. § 1983: General Rule

¶18 To maintain a section 1983 claim, a plaintiff must establish that: (1) some person deprived him of a federal constitutional or statutory right; and (2) the person acted under color of state law. Kalmas v. Wagner, 133 Wash.2d 210, 215, 943 P.2d 1369 (1997) (citations omitted). Bonneville contends that the County violated his constitutional rights (1) to be free from unreasonable search and seizure during the administrative inspection and (2) to due process at his permit revocation hearing.

C. Administrative Inspection

¶19 Bonneville maintains that the county staff unconstitutionally searched his property during their inspection because they did not have a warrant and he did not consent to the search.

1. Warrant Requirement
¶20 The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV; State v. Morse, 156 Wash.2d 1, 9, 123 P.3d 832 (2005). Administrative searches of commercial property are subject to Fourth Amendment protections with a few specific exceptions. See Camara v. Mun. Court, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The County maintains that it did not need a warrant to enter and inspect Bonneville's property because he had consented to the search.

2. Consent Exception
¶21 Warrantless searches are per se unreasonable unless they fall within an established exception to the warrant requirement. State v. Walker, 136 Wash.2d 678, 682, *315 965 P.2d 1079 (1998). One traditional exception to the warrant requirement is valid consent. State v. Reichenbach, 153 Wash.2d 126, 131, 101 P.3d 80 (2004) (citations omitted).
¶22 In criminal cases, the State has the burden of proving that the defendant voluntarily consented, that the defendant had the authority to consent, and that the search did not exceed the scope of the consent. Walker, 136 Wash.2d at 682, 965 P.2d 1079. Whether consent is voluntary depends on the circumstances, and a court will consider "(1) whether Miranda[5] warnings were given prior to obtaining consent, (2) the degree of education and intelligence of the consenting person, and (3) whether the consenting person was advised of his right not to consent." Reichenbach, 153 Wash.2d at 132, 101 P.3d 80 (citations omitted). The State must prove voluntary consent by clear and convincing evidence. State v. Nelson, 47 Wash.App. 157, 163, 734 P.2d 516 (1987) (citing State v. Cole, 31 Wash.App. 501, 504, 643 P.2d 675 (1982)).
¶23 Significantly, consent requirements are less stringent for an administrative inspection. Cranwell v. Mesec, 77 Wash.App. 90, 102, 890 P.2d 491 (1995) (quoting E.Z. v. Coler, 603 F.Supp. 1546, 1556 (N.D.Ill.1985)). The court will consider various factors to determine whether consent was properly given, "including whether there is evidence of intimidation, coercion or misrepresentation." Cranwell, 77 Wash.App. at 102, 890 P.2d 491 (quoting E.Z., 603 F.Supp. at 1556) (emphasis omitted).
¶24 Bonneville argues that he consented involuntarily because the County did not warn him of his right to refuse permission and because the County conditioned his land use permit on the right to "unfettered" access to his property. Br of Appellant at 37, 39-40. Bonneville asserts that Luppino was "clad in a bullet proof vest" and Deputy Wullick was armed and wearing a bullet proof vest at the time of the inspection.[6] 2 CP at 372. He maintains that express consent was required and that he merely "went along for the ride" because Greeson said his permit would be revoked if he did not give her unfettered access. 2 CP at 372. He claims that he "never voluntarily consented either verbally or in writing to [the County] having unfettered access to [his] home and business." 2 CP at 372. We disagree.
¶25 First, the County was not required to verbally inform Bonneville of his right to refuse consent. Bonneville cites State v. Williams, 142 Wash.2d 17, 25, 11 P.3d 714 (2000), for the proposition that the County was required to advise him of his right to refuse or revoke consent prior to entry. But Williams does not require the police to always advise a resident of his or her right to refuse permission. Williams, 142 Wash.2d at 27, 11 P.3d 714. Rather, it requires such advice only when "police seek to conduct a search for contraband or evidence of a crime without obtaining a search warrant." Williams, 142 Wash.2d at 27-28, 11 P.3d 714. The purpose of the inspection here was to determine whether Bonneville was complying with the conditional use permit, not to obtain evidence for criminal prosecution.[7] The facts here are similar to those in State v. Bustamante-Davila, 138 Wash.2d 964, 983 P.2d 590 (1999), where the Supreme Court refused to apply Ferrier[8] when police officers accompanied an immigration officer to the defendant's home to execute a deportation order. Bustamante-Davila, 138 *316 Wash.2d at 980, 983 P.2d 590. Here, the sheriff accompanied planning officials on a compliance inspection and the planning officials, like the immigration officer in Bustamante-Davila, had the right to enter the residence.
¶26 Second, the record does not support Bonneville's claim that he was coerced into giving consent in exchange for the conditional use permit. Although the hearing examiner conditioned the permit on the County having unfettered access to his property, the condition was not imposed until after Bonneville suggested it. Bonneville voluntarily agreed that an access right would resolve the County's concern that he would not comply with its enforcement efforts. He approved inspection at any time, whether random or scheduled. He signed a Pierce County Right of Entry Agreement before a notary public, certifying that he was signing the document as his "free and voluntary act." He also prepared his own Right of Entry Agreement. Finally, two county employees stated that Bonneville orally agreed to the November 22, 2006 inspection. Bonneville confirmed that he "acquiesced." 2 CP at 372.
¶27 The cases Bonneville cites in which courts found consent conditions unconstitutional are distinguishable. In Sokolov v. Vill. of Freeport, 52 N.Y.2d 341, 438 N.Y.S.2d 257, 420 N.E.2d 55 (1981), the New York Court of Appeals held an ordinance unconstitutional because it required a landlord to consent to search in exchange for a rental permit. Sokolov, 438 N.Y.S.2d 257, 420 N.E.2d at 56-57. The ordinance provided that if a person rented without a permit, he or she would be subject to criminal prosecution. Sokolov, 438 N.Y.S.2d 257, 420 N.E.2d at 57; see also State v. Finnell, 685 N.E.2d 1267, 2269, 115 Ohio App.3d 583 (1996) (finding unconstitutional a statute that required consent to inspections in exchange for a permit when non-compliance subjected person to a criminal penalty). In another case, the court determined that a building inspection was unconstitutional when the inspector found drugs in the plaintiff's home and reported his observations to the police, which resulted in criminal prosecution. State v. Browning, 67 Wash. App. 93, 95, 99, 834 P.2d 84 (1992). The homeowner in Browning did not consent to entry verbally or in writing; he simply went back in the house after the inspector asked to enter. Browning, 67 Wash.App. at 95, 834 P.2d 84.
¶28 Here, unlike the ordinance requiring consent in Sokolov, Bonneville's failure to consent would have subjected him to permit revocation, not criminal prosecution. Further, the hearing examiner did not impose the consent condition until Bonneville expressed his agreement to inspections. And unlike the homeowner in Browning, Bonneville did not just step aside when the County sought consent. He consented to the inspection verbally at the hearing and in writing in the Right of Entry Agreements, and he "acquiesced" on the day of the inspection. 1 CP at 372.
¶29 We agree with the trial court. Any reasonable person would find that Bonneville freely and voluntarily consented to the County's inspection. Thus, the trial court properly granted summary judgment.[9]

D. Due Process

¶30 Bonneville next asserts that the County violated his constitutional rights by revoking his conditional use permit without due process of law.[10]

1. Property Interest
¶31 Bonneville asserts that he has a property interest in his conditional use permit. The Fourteenth Amendment prohibits deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Property interests include "reasonable expectations of entitlement derived from independent sources such as state law." Mission Springs, Inc. v. City of Spokane, 134 Wash.2d 947, 962 n. 15, 954 P.2d *317 250 (1998) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Because the hearing examiner issued the permit on certain conditions, we question whether Bonneville had a property interest therein. Nevertheless, even if Bonneville did have some property interest in the permit, the County afforded him due process before revoking it.

2. Process Due
¶32 Due process requires notice and an opportunity to be heard. Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wash.2d 418, 422, 511 P.2d 1002 (1973) (quoting Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)). In determining whether additional process is due, we balance the private interest at stake and the risk of its erroneous deprivation against the burden on the government to implement additional safeguards. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process is satisfied as long as the government provides some meaningful opportunity for determining rights and liabilities. Estate of Kepl v. State, 34 Wash.App. 5, 10, 659 P.2d 1108 (1983). "[S]ome form of hearing is required before an individual is finally deprived of a property interest." Mathews, 424 U.S. at 333, 96 S.Ct. 893 (citing Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).[11]
¶33 Bonneville asserts that under Mathews, the risk that the hearing examiner could erroneously deprive him of the conditional use permit required a higher standard of proof at his revocation hearing. He posits that the hearing examiner should have applied a clear, cogent, and convincing standard of proof, rather than the "substantial evidence standard."[12] Br. of Appellant at 15. Bonneville is wrong on the standard the hearing examiner used; he actually applied a preponderance of the evidence standard.
¶34 Most civil cases apply the preponderance standard, but "the more important the decision, the higher the burden of proof." Mansour v. King County, 131 Wash.App. 255, 265-66, 128 P.3d 1241 (2006) (citing Nguyen v. Dep't of Health, 144 Wash.2d 516, 524, 29 P.3d 689 (2001)). Bonneville relies on cases that applied the clear and convincing standard, each of which involved a more significant interest than that at issue here: a professional medical license and indefinite, involuntary, civil commitment. Nguyen, 144 Wash.2d at 534, 29 P.3d 689; Addington v. Texas, 441 U.S. 418, 420, 433, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
¶35 Bonneville also relies on Mansour, where the court held that an arbitrary and capricious standard was an insufficient standard of proof for decisions impacting a property interest in a dog. Mansour, 131 Wash. App. at 265-66, 128 P.3d 1241. The court explained that a complete lack of a standard of proof violated the owner's due process rights, but it suggested that a preponderance of evidence standard would likely be sufficient to satisfy due process. Mansour, 131 Wash.App. at 266, 268, 128 P.3d 1241. A preponderance standard also satisfied due process when the interest at stake was a 14-day involuntary civil commitment. In re Det. of LaBelle, 107 Wash.2d 196, 220-21, 728 P.2d 138 (1986).
¶36 Here, unlike in Mansour, the hearing examiner revoked Bonneville's permit after finding the alleged violations true by a preponderance of the evidence. If the preponderance standard met due process for a 14-day involuntary civil commitment in LaBelle, it surely meets due process for revoking a conditional land use permit. Because courts generally apply the preponderance standard in all civil matters, the hearing examiner's use of it here satisfied due process. See Mansour, 131 Wash.App. at 266, 128 P.3d 1241 (citing Nguyen, 144 Wash.2d at 524, 29 P.3d 689).
*318 ¶37 The trial court did not err in ruling that the County did not violate Bonneville's constitutional rights. Thus, the court properly granted summary judgment dismissing his 42 U.S.C. section 1983 claims.

IV. Civil Conspiracy
¶38 The basis of Bonneville's conspiracy claim is unclear and unsupported by reasoned argument. Bonneville's complaint cites 42 U.S.C. section 1985(3) as the basis of his conspiracy claim, but a footnote to his opposition to the County's motion for summary judgment asserts that he withdrew that claim. On appeal, Bonneville merely cites to a Connecticut case addressing civil conspiracy[13] and requests an opportunity to conduct discovery pursuant to CR 56(f)[14] "prior to the Court ruling on the issue of conspiracy." Br. of Appellant at 44-45.
¶39 42 U.S.C. § 1985(3) "prohibits conspiracies to deprive persons or classes of persons of the equal protection of the law or of equal privileges and immunities under the law [and] only applies to discriminatory deprivations of federal rights against members of a protected class." Torrey v. City of Tukwila, 76 Wash.App. 32, 37-38, 882 P.2d 799 (1994) (citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). The plaintiff must allege class-based invidious discrimination. Griffin, 403 U.S. at 102, 91 S.Ct. 1790. To establish a common law claim for civil conspiracy, Bonneville was required to "prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." All Star Gas, Inc. v. Bechard, 100 Wash.App. 732, 740, 998 P.2d 367 (2000) (citing Wilson v. State, 84 Wash.App. 332, 350-51, 929 P.2d 448 (1996)). "`Mere suspicion or commonality of interests is insufficient to prove a conspiracy.'" All Star Gas, 100 Wash.App. at 740, 998 P.2d 367 (quoting Wilson, 84 Wash. App. at 350-51, 929 P.2d 448).
¶40 Bonneville does not assert that he is a member of a protected class as required by 42 U.S.C. § 1985(3), nor does he explain how the County agreed to accomplish an unlawful purpose. We will not consider assertions that are given only passing treatment and are unsupported by reasoned argument. See Howell v. Spokane & Inland Empire Blood Bank, 117 Wash.2d 619, 624, 818 P.2d 1056 (1991). Thus, we decline to consider the conspiracy issue on appeal.
¶41 Because we hold that Bonneville consented to the search and that he was afforded due process, we need not consider whether the County and its agents are immune from suit or whether Bonneville was required to exhaust administrative remedies. We affirm.
¶42 A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, P.J., and BRIDGEWATER, J.
NOTES
[1] Robert Bonneville is also known as Will Ellwanger.
[2] Bonneville admitted below that Hetter was his attorney, but he contests this fact on appeal.
[3] Bonneville states that the County attempted a search on March 2, 2007, and at one point refers to the "last search" as the alleged unconstitutional inspection. Br. of Appellant at 4; 2 CP at 372. He later argues that the "November 2006 and March 2007 searches" were unlawful. Br. of Appellant at 34. Greeson clarifies that the November 22, 2006 inspection is the inspection at issue.
[4] The State also brought a malicious prosecution counterclaim, which the court did not decide on summary judgment.
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[6] Bonneville's assertions imply that this contributed to a coercive environment. But the deputy never drew his weapon and was not there to collect criminal evidence.
[7] Bonneville alleges that Luppino stated that Bonneville faced criminal charges for failing to comply with a hearing examiner decision. His cite to the record does not support the statement nor does Luppino's declaration or his hearing testimony. Luppino refers to correspondence before Bonneville applied for the conditional use permit, including a "proposal to file [c]riminal [c]harges." 2 CP at 329. Bonneville has provided no evidence that the County threatened criminal charges if he did not consent to the inspection at issue here.
[8] State v. Ferrier, 136 Wash.2d 103, 114-15, 960 P.2d 927 (1998) (holding that a consensual police search is unconstitutional if the defendant is not warned of the right to refuse consent).
[9] Bonneville's assertion that consent is always an issue of fact that cannot be resolved on summary judgment is inaccurate. See, e.g., Cranwell, 77 Wash.App. at 103, 890 P.2d 491 (determining consent issue on summary judgment).
[10] Bonneville's due process argument is based on procedural due process.
[11] The Pierce County Code (PCC) § 1.22 provided Bonneville with notice, access to records, the opportunity to be heard and to question witnesses under oath, and the right to review. PCC § 1.22.
[12] PCC § 1.22.120 requires an examiner's findings of fact to be supported by substantial evidence. This provision logically applies to a standard of appellate review of the findings of fact, not the burden of proof. See Da Vita, Inc. v. Dep't of Health, 137 Wash.App. 174, 186, 151 P.3d 1095 (2007).
[13] Macomber v. Travelers Prop. & Cas. Co., 894 A.2d 240, 277 Conn. 617 (2006).
[14] CR 56(f) allows the court to order a continuance to permit additional discovery if it appears that the opposing party cannot present facts essential to justify his opposition.