FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 APR 29 AM 9: 54



**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| McKAY CHADWELL, PLLC, a | ) | NO. 68153-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMY STAMPER, an unmarried man; and | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| MEAGHAN McKAIGE and JOHN DOE McKAIGE, wife and husband, and the marital community comprised thereof, | ) | UNPUBLISHED OPINION |
| | ) | FILED: April 29, 2013 |
| | ) | |
| Appellant. | ) | |
| | ) | |

LAU, J. — Personal guarantors Meaghan and Andrew McKaige appeal the summary judgment order and judgment entered in favor of the law firm of McKay Chadwell PLLC for unpaid legal fees, costs, and interest. Because the trial court properly exercised its discretion in declining to continue the summary judgment hearing and because the record presented to the court established no material fact issues, we affirm the grant of summary judgment and the judgment in McKay's favor.

68153-2-I/2

## FACTS

The material facts are undisputed. In 2007, Federal Savings LLC retained the law firm of McKay Chadwell PLLC after Washington State and other authorities began to investigate Federal Savings for securities fraud. Jeremy Stamper signed McKay's fee agreement as Federal Savings' president. Stamper and his sister, Meaghan McKaige each signed separate guarantee agreements personally guaranteeing payments due under the fee agreement. In July 2010, after Federal Savings defaulted on the fee agreement, McKay sued Stamper and McKaige on their personal guarantees for unpaid legal fees, costs, and interest. McKay's complaint named "Jeremy Stamper, an unmarried man; and Meaghan McKaige and John Doe McKaige, wife and husband, and the marital community comprised thereof" as defendants. McKaige's husband was later identified by name as Andrew McKaige. The complaint alleged in part:

> 2.3 Defendant McKaige. Defendant Meaghan McKaige is believed and alleged to be a married woman residing outside of the state of Washington. Defendants Meaghan McKaige and John Doe McKaige are believed and alleged to be husband and wife and constitute a marital community, and each act of defendant Meaghan McKaige complained of herein was for the benefit of said marital community.

The trial court entered a default judgment against Stamper for approximately $250,000 in unpaid fees, costs, and interest.

In June 2011, acting pro se, McKaige prepared and served McKay with "Defendant's First Interrogatories and Requests for Production to Plaintiff McKay Chadwell PLLC, a professional limited liability company." This discovery consisted of 12 interrogatories and 12 requests for production. At the same time, McKaige also

-2-

prepared and served McKay with requests for admission consisting of 99 individual requests. McKay answered most but not all the discovery requests.

About 14 months after filing suit, McKay moved for summary judgment against Meaghan and Andrew McKaige (McKaige) to enforce their guarantee agreement. By then, McKaige still had not filed an answer to the complaint. McKay's motion stated, "Plaintiff McKay Chadwell, PLLC, requests the entry of summary judgment, and entry of monetary judgment against defendant Meaghan McKaige and Andrew McKaige, husband and wife, and their marital community thereof."[1] The proposed summary judgment order served on McKaige with the moving papers also sought judgment against "Meaghan McKaige and Andrew McKaige, husband and wife, and their marital community."

In July 2011, McKay requested dates from the trial court for a summary judgment hearing. Upon receiving possible dates, McKay proposed September 30, 2011, to McKaige. McKaige did not object. Twenty eight days before the hearing date, McKay e-mailed and mailed to McKaige a note for motion, a copy of its motion, all supporting documents, and a proposed order. The note indicated that a hearing with oral argument was set for September 30, 2011, at 10 a.m., in Seattle.

---

[1] Meaghan McKaige's declaration in support of her reconsideration motion acknowledged Andrew McKaige as "[m]y husband." And McKaige's unanswered and unfiled summary judgment response refers to Andrew McKaige as "husband."

Under CR 56(c), McKaige's last day to file and serve a response was September 19, 2011.[2] Four days later, McKay filed a declaration informing the trial court that no response had been served or filed. Three days later, McKaige, acting pro se, e-mailed McKay's attorney a document dated September 26, 2011, and entitled "Defendant's Response to Plaintiff's Motion for Summary Judgment." Among other things, the response asserted, "The amounts Plaintiff alleges are owed reflect services by Plaintiff outside the limited scope of the Fee Agreement." The response raised no challenge to McKay's assertion that McKaige comprised a marital community. McKaige never filed the response with the clerk of the court or provided a working copy to the trial court.

On September 28, 2011, two days before the hearing, McKay's attorney, Tyler Moore, e-mailed McKaige a copy of McKay's reply and informed her that the hearing time "is now 9:00 a.m." The summary judgment motion was scheduled to be heard on a Friday. McKaige's attorney claims McKaige first learned about the time change from 10:00 a.m. to 9:00 a.m. on "the day before the hearing [Thursday] when she opened the e-mail from plaintiff's attorney . . . ." As McKaige's e-mail quoted below indicates, she actually learned about the schedule change on the Wednesday before the hearing, not Thursday. McKaige offers no explanation as to why she delayed contacting Moore to request a continuance until the morning of the summary judgment hearing under these circumstances.

---

[2] Under CR 56(c) and King County Superior Court Local Civil Rule 56, "The adverse party may file and serve opposing affidavits, memoranda of law or other documentation not later than 11 calendar days before the hearing." CR 56(c).

-4-

On the day of the summary judgment hearing, at 8:13 a.m., Meaghan McKaige notified Moore by e-mail that she was unable to make the flight from California and requested a hearing continuance:

> I am writing to request that the hearing on the motion for Summary Judgment be rescheduled for a week from today. I was informed 36 hours ago that the hearing was moved up to its new time and due to a sick child this morning, I was unable to take an earlier flight to make it to the new hearing time. Please let me know if it is possible to reschedule the hearing. As a single parent living out of town and representing myself, I would appreciate this allowance.

Moore declined—"You have known about this hearing for 28 days, and your response was 7 days late." A few minutes later, Moore received a call from attorney Douglas Dunham, who said he had just been retained by McKaige.[3] Dunham "advised Mr. Moore that [he] was appearing and requested that [Moore] agree to a short continuance of the Motion for Summary Judgment hearing to give [Dunham] time to review the case and appropriately respond." Moore agreed to a two-week continuance as a professional courtesy to Dunham. Moore telephoned and e-mailed court staff about the agreement, but the court directed the parties to appear for the hearing.

At the hearing, the trial court advised Dunham that McKay's motion for summary judgment was unopposed, since McKaige never filed a response.[4] Dunham orally

---

[3] Meaghan McKaige's father is an attorney and is Dunham's former law partner. He called Dunham, who agreed to appear for and represent McKaige at the summary judgment hearing.

[4] We question whether the court's summary judgment ruling would be any different even if the court considered McKaige's response and even if McKaige attended the hearing or appeared by phone because, among other deficiencies, her written response containing factual assertions and bare arguments was unsworn. McKaige submitted no supporting declarations, affidavits, or documents. See Wilkerson v. Wegner, 58 Wn. App. 404, 408 n.3, 793 P.2d 983 (1990) ("The certifications considered by the trial court were not signed under penalty of perjury nor were they sworn

moved for a continuance, arguing he needed more time to prepare. The record contains no evidence that Dunham made any substantive arguments opposing McKay's motion for summary judgment. Nor does the record show that he requested the court to allow his client to appear by telephone.

The trial court denied the continuance request, granted summary judgment, and entered judgment for $290,847.50 against "defendants Meaghan McKaige and Andrew McKaige, husband and wife, and the marital community thereof." The court clerk's minute entry from the summary judgment hearing indicates:

> Plaintiff's Motion for Summary Judgment.
> The Court informs respective counsel that it would treat the motion as an unopposed motion, there being no response from the Defendant.
> Defendant moves for a continuance of the hearing.
> The Court denies Defendant's motion for continuance and grants Plaintiff's motion.
> Order on Summary Judgment is signed and filed.

After the hearing, McKaige moved for reconsideration under CR 59 and for a continuance under CR 56(f). The court later explained its rationale for denying the continuance request in an order striking certain declarations. The court's handwritten comments indicate:

> The Court adds the following observations:
>     1. Defendant McKaige, who was on notice of the summary judgment motion, never filed with the court or provided to the assigned judge or [original] judge any response to the motion. It was in fact unopposed under the court rules.
>     2. CR 56(f) requires a continuance of a summary judgment to be requested by way of an affidavit, which explains how the continuance will permit facts relevant to the motion to be provided. No such affidavit was provided, and defendant McKaige's just-retained counsel could not tell the court what such an affidavit would say if there had been time to prepare it.

statements. While not raised by the parties, we do not consider such 'certifications' to be competent proof in a summary judgment proceeding. RCW 9A.72.085.").

-6-

3. These failures to follow court rules cannot be excused by defendant McKaige's pro se status, which was voluntary. Nor does her pro se status warrant an exception from clear court rules which are applied to every other litigant. The Court adheres to its denial of what was in fact a last-minute request to continue a properly noted, unopposed motion by way of a verbal request from just retained counsel without any supporting declaration or affidavit as CR 56(f) requires.

McKaige appeals.

## ANALYSIS

The dispositive question is whether the trial court abused its discretion when it denied McKaige's oral motion to continue the summary judgment hearing premised on her attorney's need for "time to review and respond." McKaige contends that the trial court erred in denying her attorney's oral request for a continuance of the summary judgment hearing and in granting summary judgment to McKay. McKay responds that the court properly exercised its discretion under the circumstances when it denied the continuance request.

Civil Rule 56(f) allows the trial court to continue a summary judgment hearing "if the nonmoving party shows a need for additional time to obtain additional affidavits, take depositions, or conduct discovery."[5] Building Indus. Ass'n of Wash. v. McCarthy, 152 Wn. App. 720, 742, 218 P.3d 196 (2009). Whether or not the party files a CR 56(f) affidavit, we review the trial court's decision for manifest abuse of discretion. MacKay v. MacKay, 55 Wn.2d 344, 348, 347 P.2d 1062 (1959); see also State ex rel. Citizens Against Tolls (CAT) v. Murphy, 151 Wn.2d 226, 237 n.4, 88 P.3d 375 (2004). "A trial

_____

[5] CR 56(f) states, "Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Littlefield explained:

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

Littlefield, 133 Wn.2d at 47.

In the context of a CR 56(f) continuance request, the trial court does not abuse its discretion if "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact." Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

Dunham e-filed a notice of appearance the same morning he appeared for the summary judgment hearing. At the hearing, the trial court advised Dunham that his client failed to file a response, and that it would treat McKay's motion as unopposed.[6] Dunham orally moved to continue the hearing. He explained that his client only recently learned that the hearing time had been moved up an hour, and that she was unable to get an earlier flight. He also reminded the court about the parties' agreed two-week

---

[6] We assume no hearing transcript is available because the hearing was not recorded or transcribed.

-8-

continuance.[7] Unable to accommodate this time frame due to calendar congestion, the trial court offered its next available date—November 23, 2011. McKay's attorney objected to this two-month delay. Declining to schedule the November date over objection, the court granted the summary judgment motion based on McKay's summary judgment submissions.

McKaige relies on Coggle v. Snow, 56 Wn. App. 499, 784 P.2d 554 (1990), and Butler v. Joy, 116 Wn. App. 291, 65 P.3d 671 (2003), to argue that the trial court abused its discretion in declining to continue the summary judgment hearing. Both cases are distinguishable. In Coggle, a medical negligence plaintiff requested a continuance of the summary judgment hearing premised on his former attorney's imminent retirement and his need to conduct discovery necessary to defeat summary judgment. The new attorney appeared one week after the defendant filed its summary judgment motion. The new attorney promptly filed a CR 56(f) affidavit identifying the additional discovery he wished to pursue and explaining how the desired evidence would rebut a key witness's testimony. Coggle, 56 Wn. App. at 502-03. Because the new attorney complied with CR 56(f) procedures and because we thought it was unfair to punish the client for his former attorney's "apparently dilatory conduct," we held that the court abused its discretion in denying the request for a continuance. Coggle, 56 Wn. App. at 508.

In Butler, the trial court denied plaintiff's newly retained counsel's oral motion for a continuance of the summary judgment hearing. The new attorney was retained the

---

[7] McKaige cites no authority (and we found none) that compels a trial court to accept the parties' stipulated continuance.

day before the hearing. He prepared no written affidavits to support the continuance and presented the motion orally. The hearing was not recorded, so the record contained no indication whether the new attorney argued that he needed more time to obtain discovery or what further evidence he expected to produce. The court held that the trial court abused its discretion "[b]ecause we cannot find a tenable ground for the trial court's decision . . . ."[8] Butler, 116 Wn. App. at 300.

Unlike in Coggle and Butler, McKaige (1) chose to represent herself for 14 months until the summary judgment hearing, (2) prepared and served extensive interrogatories and requests for admission, (3) prepared a written summary judgment response that she never filed with the court or provided to the hearing judge as discussed above, (4) never argued she needed a CR 56(f) continuance to obtain discovery necessary to prepare a summary judgment response, and (5) offered no explanation for why she failed to retain counsel earlier in the litigation.[9] In addition, the trial court offered to continue the hearing to its next available date.

In Coggle, we noted, "The ruling on the motions for a continuance and for reconsideration is within the discretion of the trial court and is reversible by an appellate court only for a manifest abuse of discretion." Coggle, 56 Wn. App. at 504. Noting that this simple standard was in disarray, we discussed relevant Washington case law and

---

[8] The force of the court's holding is questionable given its comment that its discussion of the motion for continuance was "unnecessary to our disposition of this appeal . . . ." Butler, 116 Wn. App. at 298. We also note the opinion does not disclose the trial court's rationale for denying the continuance motion.

[9] The record shows McKaige received the summary judgment motion and supporting materials at least 28 days before the hearing. She fails to explain her delay in contacting Moore about a continuance when she learned about the time change.

authoritative sources to determine the standard by which a trial court properly exercises its discretion. We held, "The proper standard is whether discretion is exercised on untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion."[10] Coggle, 56 Wn. App. at 507.

The present case is more similar to Bonneville v. Pierce County, 148 Wn. App. 500, 202 P.3d 309 (2008). There, Division Two of this court held that denial of a motion to continue a summary judgment hearing in order to allow a permit holder's new attorney opportunity "to prepare for the hearing" was not an abuse of discretion. Bonneville, 148 Wn. App. at 507. Bonneville had ample time to retain counsel before the summary judgment hearing. He failed to request a second continuance immediately after the first continuance expired. He offered no explanation for retaining an attorney the day before the hearing, and the trial court "believed he was simply delaying the case." Bonneville, 148 Wn. App. at 507.

In her reply brief, McKaige also argues that "pro se defendants should be treated differently in some instances than pro se plaintiffs . . . [because] [p]ro se plaintiffs bring their claims to court voluntarily where pro se defendants most often are before the court involuntarily and are forced to represent themselves by their financial circumstances." Appellants' Reply Br. at 10. She cites no controlling authority for this position. As a pro se litigant, McKaige was not entitled to "special favors" from the court. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Pro se litigants are "bound by the same rules of procedure and substantive law as attorneys." Westberg v. All-Purpose

---

[10] To the extent that McKaige attempts to broaden this well-settled rule by arguing "justice" is an essential consideration, we adhere to Coggle's core holding stated above.

-11-

Structures Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). Given the extensive

undisputed record discussed above, the trial court's decision to deny a continuance was

within the range of acceptable choices. We conclude the trial court properly exercised

its discretion under the circumstances here.[11]

### Summary Judgment Order

McKaige also contends that the trial court erred in finding that McKay met its

initial burden under CR 56(c) to show the absence of a genuine issue of material fact.

Appellants' Opening Br. at 22. Specifically, she argues that McKay's own summary

judgment materials raise a genuine issue as to whether it billed Federal Savings for

work outside the scope of the fee agreement. She also argues that McKay "failed its

initial burden to prove that Andrew and Meaghan McKaige's marital community existed,

or had any obligation on the Guarantee." Appellants' Opening Br. at 30. Finally, she

argues that McKay violated CR 56(c) by serving its summary judgment motion fewer

than 28 calendar days before the hearing.[12] Appellants' Opening Br. at 30.

Under RAP 9.12, our review of an order granting summary judgment is limited to

the "evidence and issues called to the attention of the trial court." Thus, "[a]n argument

---

[11] McKaige devotes the majority of her briefing to the merits of the summary judgment motion. Given our resolution of the continuance issue, we need not address his remaining contentions about the summary judgment's merit, except as necessary.

[12] For the first time on appeal, McKaige argues she was "misled" by the change in the summary judgment hearing time from 10 a.m. to 9 a.m. Appellants' Opening Br. at 19. Generally, we do not consider arguments raised for the first time on appeal. RAP 2.5(a) (appellate court need not consider a claim raised for the first time on appeal unless it involves "lack of trial court jurisdiction," "failure to establish facts upon which relief can be granted," or "manifest error affecting a constitutional right"). And in any event, McKaige neither cites the record to support this allegation nor cites authority explaining why her reliance on McKay's erroneous representations regarding the hearing time and judge constituted a trial court error.

neither pleaded nor argued to the trial court cannot be raised for the first time on appeal." Silverhawk, LLC v. KeyBank Nat. Ass'n, 165 Wn. App. 258, 265, 268 P.3d 958 (2011); see, e.g., Cano-Garcia v. King County, 168 Wn. App. 223, 248, 277 P.3d 34 (2012) (issue not properly preserved where proponent neither raised it in his response nor argued it at the summary judgment hearing). To allow otherwise "would be to undermine the rule that an appellate court is to engage in the same inquiry as the trial court in reviewing an order of summary judgment." Wash. Fed'n of State Emps., Council 28, 121 Wn.2d 152, 163, 849 P.2d 1201 (1993).

Given these principles, "[i]t is our task to review a ruling on a motion for summary judgment based on the precise record considered by the trial court." Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 754-55, 162 P.3d 1153 (2007). That record includes those documents designated in an order granting summary judgment. RAP 9.12. The order on summary judgment shows the trial court considered "Plaintiff's Motion for Summary Judgment and supporting declaration; Defendant's having failed to respond . . . ." Because the trial court considered only McKay's submissions, McKaige's present challenges were never "called to the attention of the trial court." RAP 9.12. The sole issue McKaige brought to the trial court's attention was her request for a continuance. Therefore, under RAP 9.12, her challenges regarding the scope of the fee agreement, McKay's compliance with CR 56(c), and the trial court's imposition of community liability are waived on appeal.[13]

_____

[13] Even assuming no preservation issue, our de novo review of McKay's summary judgment materials does not indicate material issues of fact exist. And we find no merit in McKaige's CR 56(c) claim because the evidence shows McKaige

We also reject McKaige's challenge to the imposition of community liability premised on McKaige's failure to overcome the presumption that her signature on the personal guarantee bound her marital community. "A guaranty obligation of one spouse creates a presumption of community liability." Grayson v. Platis, 95 Wn. App. 824, 836, 978 P.2d 1105 (1999). Additionally, "[t]he suretyship debt or obligation of one of the spouses obligates the community property only if the community is benefited by the obligation." Warren v. Wash. Trust Bank, 19 Wn. App. 348, 360, 575 P.2d 1077 (1978). As the party seeking to avoid the guarantee, the burden rested on McKaige to rebut that presumption with clear and convincing evidence. Grayson, 95 Wn. App. at 836. McKaige did not carry this burden.[14]

Motion for Reconsideration[15]

"Motions for reconsideration are addressed to the sound discretion of the trial court; a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of that discretion." Wagner Dev., Inc. v. Fidelity & Deposit Co. of Maryland, 95 Wn. App. 896, 906, 977 P.2d 639 (1999).

McKaige's opening brief assigns error to the trial court order denying her reconsideration motion. Aside from citing the standard of review, her opening brief devotes two sentences challenging the reconsideration order:

---

suffered no prejudice from the alleged tardy summary judgment motion. She conducted discovery and prepared a summary judgment response.

[14] Nor could McKaige satisfy this burden because the record shows she does not dispute that she was married to Andrew McKaige when she signed the guarantee.

[15] McKaige failed to identify the specific fact and law as to each ground on which her reconsideration motion is based. She merely cites to CR 59.

> The trial court also refused to consider the declarations of Meaghan McKaige and Andrew McKaige by granting plaintiff s motion to strike them. It also denied Defendant's Motion for Continuance pursuant to CR 56(f). In <u>Coggle</u>, this Court found that "after failing to grant the continuance" the failure to consider declarations filed pursuant to a Motion for Reconsideration "was an abuse of discretion flowing from the court's initial denial of the motion for continuance." <u>Coggle</u>, [56 Wn. App.] at 508-09.

Appellants' Opening Br. at 21-22 (citations omitted). Because the trial court properly denied McKaige's motion to continue the summary judgment hearing, she was not entitled to present new evidence in a reconsideration motion that she could have discovered and presented at summary judgment. CR 59(a)(4); <u>Wagner Dev.</u>, 95 Wn. App. at 906. "If the evidence was available but not offered until after that opportunity passes, the parties are not entitled to another opportunity to submit that evidence." <u>Wagner</u>, 95 Wn. App at 907. We conclude that the trial court properly denied the reconsideration motion.

### Attorney Fees on Appeal

McKaige and McKay both request attorney fees on appeal under RAP 18.1(a), which authorizes an award where "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review . . . ." As "applicable law," the parties cite the fee agreement between McKay and Federal Savings. The fee agreement provides, "The Firm shall also be entitled to recover from the Client all fees, including interest and costs of collection, including reasonable attorneys' fees and costs of appeal." McKaige never signed the fee agreement. Although she signed the guarantee, the guarantee and the fee agreement are separate contracts. <u>Robey v. Walton Lumber Co.</u>, 17 Wn.2d 242, 255, 135 P.2d 95 (1943); <u>Freestone Capital</u>

Partners LP v. MKA Real Estate Opportunity Fund I LLC, 155 Wn. App. 643, 661, 230 P.3d 625 (2010).

Because McKaige signed only the guarantee and because the guarantee does not explicitly authorize attorney fees, the guarantee does not provide a basis for attorney fees under RAP 18.1. Cf. Puyallup Valley Bank v. Mosby, 44 Wn. App. 285, 290, 723 P.2d 2 (1986) (awarding attorney fees under RAP18.1 where "guaranty agreement specifically authorize[d] attorneys fees in case of litigation") (emphasis added). We deny the parties' respective attorney fee requests.

## CONCLUSION

For the reasons stated above, we affirm the trial court's grant of summary judgment and judgment in favor of McKay.

WE CONCUR: