[No. 79506-1.  En Banc.]
Argued January 15, 2008.    Decided August 7, 2008.

SUSAN E. RIVAS, *Petitioner*, v. OVERLAKE HOSPITAL MEDICAL CENTER ET AL., *Respondents*.

262

*Richard C. Carrithers*, for petitioner.

*William R. Hickman, Pamela A. Okano*, and *Sherry H. Rogers* (of *Reed McClure*), for respondents.

*Bryan P. Harnetiaux* and *Sarah C. Schreck* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 CHAMBERS, J. — This case illustrates the perils of waiting to the end of the statute of limitations to file a case. More than 10 years ago, Susan Rivas was a patient of Dr. Allan Muraki, MD. Dr. Muraki encountered complications while performing a renal angioplasty on Rivas, and one of Rivas's kidneys was lost. After surgery, Rivas spent four days in the intensive care unit (ICU). Three years and two days after the operation, Rivas filed this medical negligence action. Dr. Muraki moved to dismiss the suit as untimely because the applicable statute of limitations is three years.

¶2 The statute of limitations is tolled when a plaintiff is "incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW." Former RCW 4.16.190 (1993).[1] We must decide what "as determined" means; whether the legislature intended to incorporate the temporal and procedural requirements of our guardianship statutes or only the substantive standards for incompetency. We conclude the legislature intended to incorporate only the substantive standards. Thus, a person is incapacitated for the purpose of tolling the statute of limitations if he or she "cannot

---

[1] Since this case was filed in 1999, RCW 4.16.190 has been amended. LAWS OF 2006, ch. 8, § 303. The differences do not appear material, but we assume without deciding that the 1993 version of the statute applies.

understand the nature of the proceedings" claimed to be tolled because of an incapacity or disability that creates "a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety." Former RCW 4.16.190; RCW 11.88.010(1)(a). Given the disputed evidence before us, we agree with the trial court that Rivas's incapacity cannot be resolved on summary judgment. Thus, we reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

## FACTS

¶3 On July 19, 1996, Dr. Muraki performed a renal angiogram and angioplasty on Rivas. Rivas spent the next four days in the ICU of Overlake Hospital Medical Center. On July 21, 1999, three years and one day after the loss of her kidney apparently became "inevitable," Rivas filed a medical negligence action against Dr. Muraki, as well as other defendants. The defendants moved almost immediately for summary judgment, claiming that the three year statute of limitations for medical negligence actions barred Rivas's suit. RCW 4.16.350. Rivas responded that the statute was tolled for the four days she was in the ICU. The trial court denied the defendants' summary judgment motion, finding that genuine issues of material fact existed as to whether Rivas was sufficiently incapacitated to toll the statute of limitations.

¶4 After a year of discovery, defendants renewed their motion for summary judgment based on the statute of limitations. Defendants offered declarations from several nurses that Rivas was, at all relevant times, responsive enough to earn the highest score on the Glasgow Coma Scale[2] and was "alert and oriented at all times, and was

---

[2] The Glasgow Coma Scale "is a neurological scale which aims to give a reliable, objective way of recording the conscious state of a person, for initial as well as continuing assessment. A patient is assessed against the criteria of the scale, and the resulting points give a patient score between 3 (indicating deep unconscious-

aware of her surroundings and medical condition." Clerk's Papers (CP) at 271. Rivas countered with declarations from her medical expert, Dr. Kenneth Cogan, and family members who had visited her in the ICU. Dr. Cogan concluded that Rivas's medication regime and blood loss rendered her "incapacitated" and "incapable of understanding the nature of any legal proceedings during the period of July 19, 1996 through July 22, 1996." CP at 559. Family members described Rivas as "unresponsive" and "out of it" when they visited her in the ICU. CP at 639, 643. The trial court again denied the summary judgment motion, finding that a genuine issue of material fact existed as to whether Rivas was incapacitated.

¶5 Before the case proceeded any further, the Court of Appeals granted the defendants' motion for discretionary review. A split panel reversed the trial court's denial of summary judgment, concluding that as a matter of law, Rivas had not been incapacitated long enough to trigger the tolling statute. *Rivas v. Eastside Radiology Assocs.*, 134 Wn. App. 921, 930, 143 P.3d 330 (2006). We granted review and reverse. *Rivas v. Overlake Hosp. Med. Ctr.*, 161 Wn.2d 1007, 2007 Wash. LEXIS 589.

ANALYSIS

¶6 Summary judgment entitles one party to judgment as a matter of law and is reviewed de novo. *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005) (citing *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004)). Our interpretation of the tolling and guardianship statutes is also de novo. *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)). Our primary goal when interpreting statutes is to effectuate the legislature's intent. *Wright v.*

ness) and either 14 (original scale) or 15 (the more widely used modified or revised scale)." http://en.wikipedia.org/wiki/Glasgow_Coma_Scale (last visited Aug. 1, 2008).

*Jeckle*, 158 Wn.2d 375, 379, 144 P.3d 301 (2006) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We glean legislative intent by considering the legislation as a whole and interpreting words in context. *Id.* (citing *Campbell & Gwinn*, 146 Wn.2d at 11). Context is particularly important when harmonizing two statutes where one references the other. The referred statute must be read in context of the referring statute. Additionally, we must consider that tolling provisions, by nature, exist to assure all persons subject to a particular statute of limitations enjoy the full benefit of the limitation period. *E.g., Castro*, 151 Wn.2d at 226.

¶7 The statute of limitations is an affirmative defense, and the defendant carries the burden of proof. CR 8(c); *Haslund v. City of Seattle*, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976). A plaintiff, however, carries the burden of proof if he or she alleges that the statute was tolled and does not bar the claim. *Cannavina v. Poston*, 13 Wn.2d 182, 190-91, 124 P.2d 787 (1942) (recognizing the burden of proof being on a party asserting partial payment as a rationale to toll the statute of limitations). Generally, the statute begins to run the day the tort accrues, but there are exceptions. *E.g.*, RCW 4.16.005, .190. Relevant to this case is an exception for incompetence or disability:

> If a person entitled to bring an action mentioned in this chapter . . . be at the time the cause of action accrued . . . *incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW*, . . . the time of such disability shall not be a part of the time limited for the commencement of action.

Former RCW 4.16.190 (emphasis added). For this statute to apply, the plaintiff's incompetency or disability must exist at the time the cause of action accrues. *Id.*; *see also* RCW 4.16.250. While ideally, the statute of limitations is a defense that will be decided pretrial, when the facts are disputed the fact finder must resolve them. *E.g., John Doe v. Finch*, 133 Wn.2d 96, 101-02, 942 P.2d 359 (1997) (fact

finder had to decide whether an exercise of due diligence would have uncovered psychologist's affair with spouse); *Duke v. Boyd*, 133 Wn.2d 80, 83, 942 P.2d 351 (1997) (fact finder must decide whether doctor's negligence was fraudulently or intentionally concealed).

¶8 Former RCW 4.16.190 has four factors plaintiffs must satisfy to toll the statute of limitations based upon incompetence or disability. Plaintiffs must show that (1) they are entitled to bring the action, (2) they are incapacitated at the time the cause of action accrues, (3) they are incompetent or disabled to the degree that they cannot understand the nature of the proceedings, and (4) the incompetency or disability exists as "determined according to chapter 11.88 RCW." Former RCW 4.16.190. Only the last two factors are at issue, and they take us to the guardianship act, chapter 11.88 RCW. The guardianship act allows the superior court to appoint a guardian for a person determined to be incapacitated. RCW 11.88.010(1). The guardianship act uses the word " 'incapacitated' " as a catchall term, including " 'incompetent,' " " 'disabled,' " and " 'not legally competent.' " RCW 11.88.010(1)(f). Most relevantly, it says:

> (a) For purposes of this chapter, a person may be deemed incapacitated as to person when the superior court determines the individual has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety.
>
> (b) For purposes of this chapter, a person may be deemed incapacitated as to the person's estate when the superior court determines the individual is at significant risk of financial harm based upon a demonstrated inability to adequately manage property or financial affairs.
>
> (c) A determination of incapacity is a legal not a medical decision, based upon a *demonstration of management insufficiencies over time* in the area of person or estate. Age, eccentricity, poverty, or medical diagnosis alone shall not be sufficient to justify a finding of incapacity.

RCW 11.88.010(1) (emphasis added).

¶9 The trial court declined to decide as a matter of law whether or not the statute of limitations had run, finding that there were material questions of fact that needed to be resolved. The Court of Appeals, however, effectively created a bright line rule that a plaintiff must prove her incapacity lasted long enough for a guardian to have been appointed. *Rivas*, 134 Wn. App. at 930.

¶10 We rejected a similar argument to the one found persuasive below in *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 770 P.2d 182 (1989). Devan Young was a child suffering from asthma who became severely disabled, allegedly because of a prescribed medication that reached toxic levels in his bloodstream. Rosa Young, Devan's mother and guardian, brought a medical malpractice and product liability action, claiming her child's disability was proximately caused by that prescription drug. The suit was filed more than three years after the court appointed a guardian ad litem for Devan. Young argued that the statute was tolled because of her son's age and disability. The defendants argued, successfully at the trial court level, that the appointment of a guardian triggered the statute of limitations.

¶11 We examined the very same statutory interplay that is before us now and reversed dismissal. *Id.* at 223. We noted that under former RCW 4.16.190, the statute of limitations is tolled if the plaintiff is " 'incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW.' " *Young*, 112 Wn.2d at 220 (quoting former RCW 4.16.190 (1977)). We concluded that whether or not a guardian was or was not appointed was not relevant under this statute. We stressed that the focus was on the disabling conditions themselves and not merely upon their legal consequences under the guardianship statute. *Id.* at 221-22.

¶12 Since *Young*, the legislature has amended the guardianship act several times. Among other things, the act now states that "[a] determination of incapacity is a legal not a

medical decision, based upon a demonstration of management insufficiencies over time." LAWS OF 1990, ch. 122, § 2(1)(c), *codified as* RCW 11.88.010(1)(c). But this temporal requirement of chapter 11.88 RCW relates to the procedure and process of establishing and prosecuting a guardianship, not the conditions that disable "to such a degree that he or she cannot understand the nature of the proceedings" under former RCW 4.16.190.[3] None of the amendments, however, show disapproval of our opinion. That sort of legislative silence following the court's interpretation of a statute is at least some evidence of legislative approval. *1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 181, 149 P.3d 616 (2006) (citing *State v. Coe*, 109 Wn.2d 832, 846, 750 P.2d 208 (1988)).

¶13 We find that *Young* controls. Had the legislature intended that a claimant had to satisfy the temporal and procedural requirements of the guardianship act before availing herself of a tolling provision, it would have said so. *Young*, 112 Wn.2d at 222. The cross-reference of former RCW 4.16.190 to chapter 11.88 RCW did not require dismissal when a guardian was actually appointed for those three years and could have brought the suit. *Young*, 112 Wn.2d at 222. Instead, chapter 11.88 RCW provides the substantive definition of "disability" or "incapacity" for the purposes of tolling. In other respects, the statutes act independently. Our interpretation must be read into the statute as if it were part of the statute itself. *State v. Roggenkamp*, 153 Wn.2d 614, 629-30, 106 P.3d 196 (2005). Read in context, the requirement in RCW 11.88.010(1)(c) that the alleged incompetent person have "management insufficiencies over time" is part of a procedural protection against unwarranted guardianships, not part of the sub-

---

[3] Since *Young*, chapter 11.88 RCW has been significantly amended. Illustratively, in 1990, the legislature substantially overhauled the chapter, removing language that the passage of time had rendered offensive to the modern ear and updating procedures to reflect current realities. LAWS OF 1990, ch. 122. The statutes were revised again in 1991 and 2005 with respect to the voting rights of incapacitated persons. LAWS OF 1991, ch. 289; LAWS OF 2005, ch. 236; RCW 11.88.010.

stantive standards of incompetence. We therefore hold that there is no bright line minimum time a person must be incapacitated to toll the statute of limitations.

CONCLUSION

¶14 The trial court concluded that unresolved material questions of fact preclude summary judgment dismissal of this case. We agree. Rivas is entitled to the benefit of former RCW 4.16.190 if she can persuade the trier of fact that she was incapacitated to the extent that she could not understand the nature of her cause of action when it accrued as determined under the substantive standards of the guardianship act. Accordingly, we reverse the Court of Appeals, reinstate the trial court's summary judgment order, and remand for further proceedings consistent with this opinion.

C. JOHNSON, MADSEN, SANDERS, and OWENS, JJ., and VAN DEREN, J. PRO TEM., concur.

¶15 FAIRHURST, J. (dissenting) — The relevant tolling statute, RCW 4.16.190, unambiguously instructs the court to determine disability according to the standard set forth in chapter 11.88 RCW, the guardianship act. The guardianship act bases a determination of disability or incapacity "upon a demonstration of management insufficiencies over time." RCW 11.88.010(1)(c). Because the majority removes this foundational element from the statute, I respectfully dissent. In my view, Susan Rivas must demonstrate management insufficiencies "over time" in order to avail herself of the tolling statute. Rivas' short-lived disability fails to evidence a "demonstration of management insufficiencies over time," and, therefore, I would affirm the Court of Appeals.

¶16 Exemptions to the statutes of limitations are " 'strictly construed, and cannot be enlarged from considerations of apparent hardship or inconvenience.' " *Rushlight*

*v. McLain*, 28 Wn.2d 189, 199, 182 P.2d 62 (1947) (quoting 34 AM. JUR. § 189, at 153). When interpreting any statute, our chief concern is to carry out the legislature's intent. *In re Det. of Martin*, 163 Wn.2d 501, 506, 182 P.3d 951 (2008). We start our inquiry with the statute's plain language. *Id.* at 508. We cannot rewrite an unambiguous statute, regardless of whether we think the legislature intended something else but failed to adequately express itself. *Id.* at 509. We should also avoid statutory interpretations that would render a portion of the statute superfluous or meaningless. *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007).

¶17 The majority's interpretation of the tolling statute and the guardianship act renders subsection (c) of the substantive standard entirely superfluous. To reach its conclusion, the majority relies on our construction of the tolling statute and former guardianship statutes in *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 770 P.2d 182 (1989). I agree with the majority that *Young* counsels the court to borrow the substantive standard of incapacity contained in the guardianship act to determine whether tolling applies. *Id.* at 222.

¶18 Since *Young*, however, the legislature completely revised the substantive standard for determining incapacity. In *Young*, the court examined the following definition:

"An 'incompetent' is any person who is either:

"(a) Under the age of majority, as defined in RCW 11.92.010, or

"(b) Incompetent by reason of mental illness, developmental disability, senility, habitual drunkenness, excessive use of drugs, or other mental incapacity, of either managing his property or caring for himself or both.

". . . .

". . . [T]he term 'disabled person' means an individual who is in need of protection and assistance by reason of mental illness, developmental disability, senility, habitual drunkenness, excessive use of drugs, or other mental incapacity, but cannot be found to be fully incompetent."

*Id.* at 221 (alterations in original) (quoting former RCW 11.88.010(1), (2) (1977)). Under this former statute, the substantive standard for determining incapacity focused on the specific condition underlying the individual's incapacity. *Id.*

¶19 The current standard for determining incapacity focuses on the practical effect of being incapacitated—being unable to care for oneself or one's estate. RCW 11.88-.010(1)(a), (b). The legislature also added subsection (c) to the standard, requiring that the determination be based "upon a demonstration of management insufficiencies over time." RCW 11.88.010(1)(c). The *Young* court, however, could not consider the import of the "over time" language because it did not exist in the former version of the statute. *Id.* I disagree with the majority's conclusion that we should not consider the "over time" language as part of the substantive standard for incapacitation based on *Young.* *Id.* Rather, if our holding in *Young* compels us to base a determination of disability for tolling purposes on the substantive standard contained in RCW 11.88.010(1), then we must also include subsection (c), which requires a "demonstration of management insufficiencies over time." RCW 11.88.010(1)(c).

¶20 The majority, however, mischaracterizes the "over time" language as procedural, not substantive, merely referring to the length of time it takes to appoint a guardian. Majority at 270. Read in context, however, the "over time" language does relate to the substantive condition of the allegedly incapacitated person. Subsection (c) refers to the permanence of the allegedly incapacitated person's condition. RCW 11.88.010(1)(c) provides, "A determination of incapacity is . . . based upon a demonstration of management insufficiencies over time in the area of person or estate. Age, eccentricity, poverty, or medical diagnosis alone shall not be sufficient to justify a finding of incapacity." In other words, a finding or determination of incapacity must include a demonstration of management insufficiencies over time. Because subsection (c) refers to the allegedly

incapacitated person's condition and the guardianship act bases a determination of incapacity upon subsection (c), its "over time" language constitutes an essential element of the substantive standard to determine disability for the purposes of tolling. RCW 11.88.010(1)(c).

¶21 When one measures Rivas' temporary condition against the full standard for determining incapacity, Rivas' tolling argument fails as a matter of law. Rivas' transient incapacitation in the hospital fails to demonstrate management insufficiencies over time. I would affirm the Court of Appeals and hold Rivas was not incapacitated as determined by the guardianship act and, therefore, the statute of limitations did not toll.

ALEXANDER, C.J., and J.M. JOHNSON, J., concur with FAIRHURST, J.

Reconsideration denied October 20, 2008.