# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DIANA SHERMAN and MARK SHERMAN, | No. 50914-8-II |
| Respondents, | |
| v. | PUBLISHED OPINION |
| PFIZER, INC., WYETH LLC (formerly known as WYETH, INC); WYETH HOLDINGS CORPORATION; WYETH PHARMACEUTICALS INC., SCHWARZ PHARMA, INC.; UCB, INC; ALAVEN PHARMACEUTICAL LLC, QUALITEST PHARMACEUTICALS, INC., GENERICS BIDCO I, LLC, RANBAXY PHARMACEUTICALS, INC.; GASTROENTEROLOGY ASSOCIATES, PLLC., GRACE KIM, RPh, ROBERTA MATTHEWS, RPh, RITE AID CORPORATION, | |
| Defendants, | |
| BRUCE A. SILVERMAN, M.D., | |
| Respondent, | |
| TEVA PHARMACEUTICALS, INC., PLIVA, INC., BARR LABORATORIES, INC., | |
| Appellants. | |

MAXA, C.J. – PLIVA, Inc., Teva Pharmaceuticals USA, Inc., and Barr Laboratories, Inc.

(collectively Generic Defendants) appeal the trial court's denial of their summary judgment

motion in a products liability lawsuit filed by Diana Sherman.

The Generic Defendants are manufacturers of metoclopramide, the generic version of the prescription drug Reglan. Sherman developed a movement disorder called tardive dyskinesia after taking metoclopramide for six years as prescribed by Dr. Bruce Silverman. She filed a lawsuit against the Generic Defendants, alleging that they had violated the Washington Product Liability Act (WPLA), chapter 7.72 RCW, by failing to provide adequate warnings about the risk of developing tardive dyskinesia associated with using metoclopramide.

Sherman's duty to warn claim against the Generic Defendants derives from federally approved changes to the Reglan label, also known as the "package insert," that in 2004 and 2009 strengthened the warnings about using metoclopramide. Sherman claims that the Generic Defendants violated their duty to warn in two ways. First, they failed to update their package inserts for generic metoclopramide to reflect the strengthened warnings on the revised Reglan labels. Second, they failed to communicate the strengthened warnings to Dr. Silverman and the physician community in general in other ways besides in their package inserts.

We hold that the trial court erred in denying the Generic Defendants' summary judgment motion regarding (1) Sherman's "failure to update" claim because Dr. Silverman's testimony that he did not read any package inserts precluded any genuine issue of fact as to whether the Generic Defendants' failure to update their metoclopramide warnings proximately caused her tardive dyskinesia; and (2) Sherman's "failure to communicate" claim because, under the facts of this case, the Generic Defendants had no duty under the WPLA to communicate warnings by means other than the package insert.[1]

---

[1] The Generic Defendants also argue that federal law preempts any state law claims for failing to provide the strengthened warnings. Because we reverse on other grounds, we do not address this argument.

Accordingly, we reverse the trial court's order denying the Generic Defendants' summary judgment motion and remand for the trial court to dismiss Sherman's claims against the Generic Defendants.

FACTS

*Prescription for Metoclopramide*

Metoclopramide is a prescription medication that is used for the treatment of gastroesophageal reflux. A known risk of using metoclopramide includes the development of tardive dyskinesia, a neurological disorder characterized by abnormal involuntary movements.

Sherman first saw Dr. Silverman in 2003 for severe digestive issues. After other treatments failed to relieve Sherman's symptoms, Dr. Silverman prescribed metoclopramide. While on metoclopramide, Sherman's digestive symptoms improved significantly. She stayed on metoclopramide from September 2004 to December 2010.

Dr. Silverman evaluated Sherman regularly while she was on metoclopramide and before 2010 did not see any indication that she was experiencing involuntary movements. However, in June 2010, Sherman began experiencing involuntary movements. In August 2011, she was diagnosed with tardive dyskinesia.

*Package Insert Warnings*

Beginning in 1985, the package insert for Reglan contained a warning stating that tardive dyskinesia may develop in patients treated with metoclopramide. The warning stated that the risk of developing the syndrome was "believed to increase with the duration of treatment and the total cumulative dose." Clerk's Papers (CP) at 715. The warning also stated that "[e]xtrapyramidal symptoms, manifested primarily as acute dystonic reactions, occur in approximately 1 in 500 patients" treated with metoclopramide. CP at 715. Under the dosage and

administration section, the package insert stated that "[t]herapy longer than 12 weeks has not been evaluated and cannot be recommended." CP at 716.

In 2004, the brand-name manufacturer revised the Reglan package insert. Both the indications and usage section and the dosage and administration section of the revised package insert contained a statement that therapy with metoclopramide "should not exceed 12 weeks in duration." CP at 766. There was no change to the reference to tardive dyskinesia in the warnings section.

In 2009, the Food and Drug Administration (FDA) required the brand-name manufacturer to add a "black box warning" to the Reglan package insert. CP at 84. The warning was placed at the top of the package insert and stated:

WARNING

TARDIVE DYSKINESIA

Treatment with metoclopramide can cause tardive dyskinesia, a serious movement disorder that is often irreversible. The risk of developing tardive dyskinesia increases with duration of treatment and total cumulative dose. Metoclopramide therapy should be discontinued in patients who develop signs or symptoms of tardive dyskinesia. There is no known treatment for tardive dyskinesia. In some patients, symptoms may lessen or resolve after metoclopramide treatment is stopped. Treatment with metoclopramide for longer than 12 weeks should be avoided in all but rare cases where therapeutic benefit is thought to outweigh the risk of developing tardive dyskinesia.

See WARNINGS.

CP at 503.

The warnings section of the revised package insert contained additional information about tardive dyskinesia, including that "one published study reported a TD [tardive dyskinesia] prevalence of 20% among patients treated for at least 12 weeks." CP at 507. The warning concluded, "Treatment with metoclopramide for longer than 12 weeks should be avoided in all

but rare cases where therapeutic benefit is thought to outweigh the risk of developing TD." CP at 507.

*Complaint*

In 2013, Sherman filed a complaint against the Generic Defendants and others.[2] In her amended complaint, she asserted a WPLA claim against the Generic Defendants for failing to provide adequate warnings to doctors regarding the use of metoclopramide. Specifically, Sherman alleged that the Generic Defendants had breached their duty to provide adequate warnings by failing (1) to update their package inserts for metoclopramide to match the strengthened warnings added to the Reglan label in 2004 and 2009, and (2) to communicate the new warning information in the revised Reglan labels to doctors through other means.

In his deposition, Dr. Silverman stated that he was aware when he prescribed metoclopramide for Sherman that one of the potential risks was development of some sort of movement disorder. For any patient on metoclopramide, including Sherman, he would always watch for movement disorders. Dr. Silverman stated that he was not aware of any clinician who had actually observed tardive dyskinesia associated with using metoclopramide, but that at some point "word got around" that tardive dyskinesia was something for which doctors should be looking. CP at 192.

However, Dr. Silverman testified that he did not read package inserts and did not recall ever reading a package insert. He did not use package inserts to learn about medications. Specifically, Dr. Silverman testified that he had never read a package insert for Reglan or

---

[2] Sherman also named as defendants Dr. Silverman and his medical group, the brand-name manufacturers of Reglan, and the pharmacy and pharmacist who filled the prescription. Sherman apparently settled her claims with the brand-name manufacturers, and the trial court dismissed her claims against the pharmacy and pharmacist. The claims against Dr. Silverman and his medical group apparently are pending.

metoclopramide. He also did not recall ever seeing a "Dear Doctor" letter[3] from a drug manufacturer. CP at 178. He said that such letters might have been in a stack of mail he received every day that he never opened. But he generally did not learn new information about medications through the mail.

Regarding his treatment of Sherman, Dr. Silverman testified that he did not rely on any package insert for Reglan or for generic metoclopramide when deciding whether to initially prescribe metoclopramide and whether to continue prescribing metoclopramide. Similarly, he stated that any changes to the package inserts for metoclopramide did not impact his prescription decision because he did not look at them. Instead, he relied on his clinical training and experience, the experience of his colleagues and associates, and his mentors and people in the academic world who he respected.

The Generic Defendants filed a motion for summary judgment. In support, they relied on Dr. Silverman's deposition testimony to argue that any failure to warn could not be the proximate cause of Sherman's condition as a matter of law. The trial court denied the summary judgment motion.

The Generic Defendants filed a motion for discretionary review of the trial court's ruling. A commissioner of this court granted the motion. Ruling Granting Review, *Sherman v. PLIVA, Inc.*, No. 50914-8-II (Wash. Ct. App. Feb. 28, 2018).[4]

---

[3] A "Dear Doctor" letter is a communication drug manufacturers send to doctors providing additional information regarding medications they produce. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 615, 131 S. Ct. 2567, 180 L. Ed. 2d 580 (2011); 21 C.F.R. 200.5.

[4] Sherman initially argues that we should hold that the commissioner erred in granting discretionary review under RAP 2.3(b)(1) because the trial court did not commit obvious error. However, to challenge the commissioner's ruling, Sherman was required to file a motion to modify that ruling under RAP 17.7(a). She failed to file a motion to modify. Therefore, we decline to consider this argument.

ANALYSIS

A.  LEGAL PRINCIPLES

1.  Summary Judgment Standard of Review

We review a trial court's decision on a summary judgment motion de novo.  *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017).  We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  *Id.*  Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue.  *Id.* at 183.

The moving party bears the initial burden of proving that there is no genuine issue of material fact.  *Id.*  A defendant can move for summary judgment based on the contention that there is an absence of evidence to support the plaintiff's claim.  *Id.*  The burden then shifts to the plaintiff to present specific facts that rebut the defendant's contention and show a genuine issue of material fact.  *Id.*  Summary judgment is appropriate if a plaintiff fails to present sufficient evidence on all essential elements of the claim.  *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey PC*, 180 Wn. App. 689, 699, 324 P.3d 743 (2014).

2.  RCW 7.72.030 – Duty to Warn

Under the WPLA, a product manufacturer can be liable for the failure to provide adequate warnings regarding the product if that product caused harm to the plaintiff.  *See O'Connell v. MacNeil Wash Sys. Ltd.*, 2 Wn. App. 2d 238, 246, 409 P.3d 1107 (2017).  RCW 7.72.030(1) states:

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product

was . . . not reasonably safe because adequate warnings or instructions were not provided.

The WPLA's liability standards are derived from the *Restatement (Second) of Torts* §402A (Am. Law Inst. 1965). *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 754, 389 P.3d 517 (2017).

Although RCW 7.72.030(1) expresses a negligence liability standard, the strict liability standard established in *Restatement* §402A apparently applies to failure to warn claims. *Taylor*, 187 Wn.2d at 760, 764. Comment k to §402A provides an exception to the application of strict liability for "[u]navoidably unsafe products," including prescription drugs. However, a product is "unavoidably unsafe" and the exception applies only when the product is "accompanied by adequate warnings." *Taylor*, 187 Wn.2d at 764.

### 3. Learned Intermediary Doctrine

In evaluating a prescription drug manufacturer's duty to provide adequate warnings under RCW 7.72.030(1), Washington courts apply the learned intermediary doctrine. *Taylor*, 187 Wn.2d at 757-58; *Terhune v. A. H. Robins Co.*, 90 Wn.2d 9, 13-14, 577 P.2d 975 (1978).

> Under the learned intermediary doctrine, manufacturers of medical products can satisfy their duty to warn patients of the risks of their products by providing those warnings to the doctors prescribing the products. The manufacturer's duty to provide warnings to patients transfers to the doctor, who is in a better position to communicate them to the patient.

*Taylor*, 187 Wn.2d at 757.

The Supreme Court in *Terhune* explained the rationale behind and effect of the learned intermediary doctrine in prescription drug cases:

> Where a product is available only on prescription or through the services of a physician, the physician acts as a "learned intermediary" between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. The physician

decides what facts should be told to the patient. Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient.

90 Wn.2d at 14.

Here, the Generic Defendants had no duty under the learned intermediary doctrine to directly warn patients like Sherman who were prescribed metoclopramide. Their duty was to provide adequate warnings directed to physicians through the package inserts required under federal law. *See McKee v. Am. Home Prods. Corp.* 113 Wn.2d 701, 718, 782 P.2d 1045 (1989).

B.      DUTY TO UPDATE METOCLOPRAMIDE WARNINGS

Sherman alleges that the Generic Defendants breached their duty to warn by failing to update their package inserts to reflect the strengthened warnings included in the 2004 and 2009 revisions to the Reglan package inserts. The Generic Defendants argue that even if their package inserts were inadequate, the trial court erred in denying their summary judgment motion regarding the failure to update claim based on proximate cause because Dr. Silverman testified that he did not read any package inserts and did not consider package inserts in prescribing metoclopramide for Sherman. We agree with the Generic Defendants.

1.      Proximate Cause

To establish proximate cause based on a manufacturer's failure to warn, the plaintiff must show that the failure to warn was both the cause in fact and the legal cause of the harm. *Hiner v. Bridgestone/Firestone, Inc.*, 138 Wn.2d 248, 256, 978 P.2d 505 (1999). Cause in fact refers to the actual connection between an act and an injury – whether, but for the act, the injury would not have occurred. *See Dunnington v. Virginia Mason Med. Ctr.*, 187 Wn.2d 629, 636, 389 P.3d 498 (2017). The Generic Defendants focus on the cause in fact prong.

2. *Douglas v. Bussabarger*

The Generic Defendants argue that summary judgment was appropriate regarding proximate cause here under *Douglas v. Bussabarger*, 73 Wn.2d 476, 438 P.2d 829 (1968). We agree.

In *Douglas*, the plaintiff was injured by the spinal block used to anesthetize her during an operation. *Id.* at 477. She sued both the doctor who administered the spinal block and the drug company that supplied the anesthetic. *Id.* The Supreme Court summarily held that any failure to warn by the drug manufacturer could not be the proximate cause of the plaintiff's harm. *Id.* at 477-78. The court's entire analysis was as follows:

> There is no substantial basis for appeal as to defendant-drug company. . . . The only question raised by plaintiff is whether the company should have labeled the drug's container so as to warn of possible dangers of use of the drug. However, even if we assume such labeling should have taken place, defendant-Dr. Bussabarger testified that *he relied on his own knowledge of anesthetics and, in fact, did not read the labeling which was on the container*. Thus, if defendant-drug company was negligent in not labeling its container so as to warn of dangers, this negligence was not a proximate cause of plaintiff's disability.

*Id.* at 478 (emphasis added).

The only reported Washington case that has cited *Douglas* regarding a drug company's duty to warn is *Hibbs v. Abbott Laboratories*, 62 Wn. App. 451, 814 P.2d 1186 (1991). In *Hibbs*, the court noted that in *Douglas* the doctor's testimony that he did not read the drug label allowed the Supreme Court to conclusively determine that the doctor would not have seen any warnings the drug company might have provided. *Hibbs*, 62 Wn. App. at 456-57. However, the court distinguished *Douglas* because the doctor in *Hibbs* "never said that he did not or would not have read the labeling. He simply explained that it was his own knowledge of the drug that persuaded him to prescribe it . . . , not the drug company's promotional literature." *Id.* at 457.

Sherman appears to question the holding in *Douglas*, citing a New Mexico case that distinguished *Douglas* as not well reasoned. *Richards v. Upjohn Co.*, 95 N.M. 675, 680, 625 P.2d 1192 (1980). However, in *Thom v. Bristol-Myers Squibb Co.*, the Tenth Circuit Court of Appeals stated, "The majority of courts that have examined the issue have held that when a physician fails to read or rely on a drug manufacturer's warnings, such failure constitutes the 'intervening, independent and sole proximate cause' of the plaintiff's injuries, *even where the drug manufacturer's warnings were* inadequate." 353 F.3d 848, 856 (10th Cir. 2003) (quoting *Formella v. Ciba-Geigy Corp.*, 100 Mich. App. 649, 300 N.W.2d 356, 358-59 (1980). The court cited to *Douglas*, 73 Wn.2d 476, and other cases for this proposition.

In any event, *Douglas* is a Washington Supreme Court case that states a clear holding regarding proximate cause. We are required to follow this binding authority. *Sluman v. State*, 3 Wn. App. 2d 656, 696, 418 P.3d 125, *rev. denied* 192 Wn.2d 1005 (2018). As a result, *Douglas* provides the controlling law in this case.

3.    Analysis

Here, Dr. Silverman testified unequivocally that (1) he did not read package inserts and did not recall ever reading a package insert, (2) he had never read a package insert for Reglan or metoclopramide, and (3) any changes to the package inserts for metoclopramide did not impact his prescription decision because he did not look at them. Sherman presented no evidence that would create a genuine issue of fact regarding whether Dr. Silverman ever read the package inserts for metoclopramide.

Based on these undisputed facts, *Douglas* controls. The Generic Defendants' alleged failure to update the package inserts cannot be the proximate cause of Sherman's condition as a

matter of law because even if they had updated the package inserts, Dr. Silverman would not have read them.

Because Dr. Silverman did not read package inserts, there is no genuine issue of fact regarding whether the Generic Defendants' alleged failure to update the warnings proximately caused her condition. Accordingly, we hold that the trial court erred in denying the Generic Defendants' summary judgment motion regarding Sherman's failure to update claim.

## C. DUTY TO COMMUNICATE WARNINGS IN OTHER WAYS

Sherman alleges that the Generic Defendants breached their duty to warn by failing to communicate the risks of metoclopramide to Dr. Silverman and to the physician community in ways other than in the package insert. The Generic Defendants argue that the trial court erred in denying their summary judgment motion regarding this claim because they had no such "duty to communicate" under the WPLA. We agree with the Generic Defendants.[5]

### 1. Nature of Sherman's Claim

The exact nature of Sherman's claimed duty to communicate claim is unclear. Sherman states that "her claims are about Generic Defendants' failures to communicate to [Dr. Silverman], or to anyone in the physician community whose opinion he deems important, the multiple changes that were made to that label which substantially increased the warnings associated with long-term use." Br. of Resp't at 20-21. She further states that "Dr. Silverman's failure to read the package insert is irrelevant to Mrs. Sherman's claim that Generic Defendants failed to communicate the drug's approved warnings in *other* ways." Br. of Resp't at 22.

---

[5] The Generic Defendants also argue that Sherman cannot show there is a genuine issue of fact as to whether the failure to communicate was a proximate cause of her condition. Because we hold that the Generic Defendants had no duty to communicate under the WPLA, we do not address proximate cause.

However, she does not specifically identify in her appellate brief the "other" type of communications that she believes the Generic Defendants were required to send. In another context, Sherman discusses Dear Doctor letters. She apparently contends that the Generic Defendants at least were required to send Dear Doctor letters to Dr. Silverman and to other doctors in the physician community.

In her complaint, Sherman alleged that the Generic Defendants had a duty to (1) communicate to doctors through such means as Dear Doctor letters and advertising in medical periodicals the new warning information in the revised Reglan labels, (2) disseminate information about the risks of metoclopramide throughout the medical community in the form of reprinted publications of peer-reviewed scientific research on metoclopramide use, and (3) sponsor independently produced educational programs for doctors about metoclopramide use. But other than the Dear Doctor letters, Sherman does not mention any of these other means of communication in her brief.

2. Scope of Duty to Warn

Regardless of the type of other communication that Sherman claims the Generic Defendants were required to make, the Generic Defendants argue that they had no duty under the WPLA to make *any* communications to doctors regarding warnings other than in the package insert. We agree under the fact of this case.

As noted above, RCW 7.72.030(1) addresses the liability of a product manufacturer for the failure to provide adequate warnings. That statute states:

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided.
> . . . .

13

 (b) A product is not reasonably safe because adequate warnings or instructions were not *provided with the product*, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

RCW 7.72.030(1) (emphasis added).

RCW 7.72.030(1)(b) expressly states that adequate warnings must be "provided with the product." The Supreme Court in *Taylor* also stated that "the WPLA requires that warnings be *provided with products*." 187 Wn.2d at 753 (emphasis added). For prescription drugs, the package inserts are provided with the product. *See McKee*, 113 Wn.2d at 718. Nothing in RCW 7.72.030(1)(b) requires product manufacturers to provide additional warnings beyond those that are provided with the product.

In addition, comment k to *Restatement* §402A states that unavoidably unsafe products must be "*accompanied by* proper directions and warning." (Emphasis added.) And the court in *Terhune* – which applied comment k – stated that that a drug manufacturer may rely on the doctor as a learned intermediary if "the product . . . *carries* the necessary instructions and warnings." 90 Wn.2d at 14 (emphasis added). *Restatement* §402A and *Terhune* predate the adoption of the WPLA. But as the Supreme Court noted in *Taylor*, the WPLA "closely mirrors" §402A. 187 Wn.2d at 754.

The Generic Defendants also cite to cases from other jurisdictions holding that a drug manufacturer's duty to warn is limited to providing a package insert that accompanies the product. *See Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1250 (11th Cir. 2013); *Metz v. Wyeth, LLC*, 872 F. Supp. 2d 1335, 1344-45 (M.D. Fla. 2012).

Sherman disagrees with the Generic Defendants' interpretation of RCW 7.72.030(1)(b) and their reliance on *Restatement* §402A. But she does not explain why the "provided with the

product" language in RCW 7.72.030(1)(b) should be disregarded.[6]  And she cites no authority

for the proposition that a prescription drug manufacturer has a duty to communicate the risks of

the product in any manner other than through package inserts.

Sherman suggests that the Generic Defendants had a duty to communicate by means

other than the package inserts under RCW 7.72.030(1)(c).  This subsection states:

> A product is not reasonably safe because adequate warnings or instructions were
> not provided after the product was manufactured where a manufacturer learned or
> where a reasonably prudent manufacturer should have learned about a danger
> connected with the product after it was manufactured.  In such a case, the
> manufacturer is under a duty to act with regard to issuing warnings or instructions
> concerning the danger in the manner that a reasonably prudent manufacturer would
> act in the same or similar circumstances.  This duty is satisfied if the manufacturer
> exercises reasonable care to inform product users.

RCW 7.72.030(1)(c).

However, RCW 7.72.030(1)(c) applies when the product manufacturer learns *after the*

*product was manufactured* (and presumably after adequate warnings were provided with the

product) about a danger connected with the product.  Here, Sherman does not argue that the

Generic Defendants first learned about the need for strengthened warnings for metoclopramide

after their generic metoclopramide was manufactured.  Sherman claims that the Generic

Defendants knew about the risk of tardive dyskinesia associated with long-term use of

metoclopramide when the strengthened warnings were approved in 2004 and 2009 and failed to

include those warnings with their product or otherwise.

---

[6] Sherman primarily argues, correctly, that RCW 7.72.030(1)(b) supports her claim that the
Generic Defendants had a duty to *update* their package inserts because that claim involves
warnings "provided with the product."  But that argument is immaterial to her "duty to
communicate" claim.  And as discussed above, Sherman's duty to update claim fails on
proximate cause grounds.

We conclude that a prescription drug manufacturer's duty under RCW 7.72.030(1)(b) is to provide adequate warnings with the product and that there is no duty under the WPLA to communicate such warnings to doctors in ways other than through package inserts. Further, under the facts of this case, the duty to warn under RCW 7.72.030(1)(c) is inapplicable. Accordingly, we hold that the trial court erred in denying the Generic Defendants' summary judgment motion regarding Sherman's duty to communicate claim.

CONCLUSION

We reverse the trial court's ruling denying the Generic Defendants' summary judgment motion, and we remand for the trial court to dismiss Sherman's claims against the Generic Defendants.

MAXA, C.J.

We concur:

WORSWICK, J.

LEE, J.