FILED
8/18/2025
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| MILAGROS MONIZ as guardian of JOSHUA MONIZ and minor J.M.M., | No. 85853-0-I |
| Respondent, | |
| v. | |
| KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 1 dba VALLEY MEDICAL CENTER and KENT CLINIC, a public entity, | UNPUBLISHED OPINION |
| Petitioner. | |

BOWMAN, A.C.J. — In 2016, Joshua Moniz collapsed from cardiac arrest and suffered an anoxic brain injury. In 2022, his wife and legal guardian, Milagros Moniz, sued King County Public Hospital District No. 1 on behalf of Joshua[1] and their minor son. The health care provider moved for summary judgment, arguing the claim is time-barred. Milagros argued the applicable statute of limitations was tolled because Joshua was incapacitated at the time his cause of action accrued. The trial court denied the motion, concluding that material disputed facts remain about whether and when the statute of limitations was tolled. The court then certified its order to this court for discretionary review. We affirm and remand for further proceedings.

---

[1] For clarity, we refer to Joshua Moniz and Milagros Moniz by their first names when discussing them in their individual capacity. We mean no disrespect.

FACTS

On May 31, 2016, 35-year-old Joshua experienced chest pains and shortness of breath, so he went to Valley Medical Center's emergency room (ER). At the ER, Dr. Jessica Depaepe examined Joshua. She ordered an electrocardiogram (EKG), chest imaging, and labs, including cardiac enzymes. All tests came back normal. Dr. Depaepe concluded that "[w]ith a normal EKG and [two] normal sets of cardiac enzymes[,] myocardial infraction is unlikely and symptoms seem atypical for unstable angina." She decided Joshua's symptoms suggested gastroesophageal reflux disease (GERD). Dr. Depaepe discharged Joshua with instructions on GERD, placed him on daily omeprazole, and told him to "follow-up with his primary care provider in one week."

On June 9, 2016, Joshua went to Valley's Kent Clinic to see his primary care provider, Dr. Johnny Shum. Joshua told Dr. Shum about his continuing chest pain and fatigue. Based on test results, Dr. Shum's differential diagnoses included GERD, anxiety, and sleep apnea. He did not explore potential cardiac causes of Joshua's shortness of breath. Dr. Shum instructed Joshua to continue to follow the GERD instructions and take omeprazole. He also recommended vitamin C and a multivitamin and told Joshua to provide a stool sample in two weeks to check for specific bacteria that can cause ulcers. Dr. Shum told Joshua to return for a follow-up appointment in six weeks.

On July 31, 2016, Joshua and his family were riding their bikes around Bradley Lake Park. About half way around the lake, Joshua collapsed and was unresponsive. Someone called 911, and an off-duty medic administered chest

2

compressions. About 10 minutes later, Central Pierce Fire and Rescue arrived. They had to resuscitate Joshua four times before intubating him, then transported him to MultiCare Good Samaritan Hospital. Joshua lost his pulse again when he arrived at the ER.

At Good Samaritan, Joshua showed "concerning neurologic signs," so the hospital sedated him until August 10, 2016. He received several diagnoses, including coronary artery disease and anoxic brain injury. Because of the brain injury, Good Samaritan discharged Joshua to its inpatient rehabilitation facility on August 17, 2016 with a tracheostomy collar, PEG[2] tube, and Foley catheter[3] in place.

On September 27, 2016, psychologist Dr. Howard Lloyd evaluated Joshua's neurological capabilities while he was still in inpatient rehab. Dr. Lloyd determined that Joshua had impaired attention and "executive functioning" but that he had "functionally intact" mental control, language skills, and memory. Dr. Lloyd concluded that Joshua should be able to manage his medications and finances and make his own decisions if given a considerable amount of time to process the information, so he recommended outpatient cognitive rehabilitation. Dr. Lloyd determined that Joshua could not "return to work or resume driving in the foreseeable future," so he should apply for Social Security disability. Dr. Lloyd also stated that because of his physical limitations, Joshua may require 24-

---

[2] A percutaneous endoscopic gastronomy (PEG) is a medical procedure used to place a feeding tube directly into the stomach.

[3] A Foley catheter is a medical device that helps drain urine from the bladder.

hour supervision, and that from "a purely cognitive perspective," Joshua should not be left alone for extended periods of time.

Eventually, the hospital discharged Joshua into the care of his wife Milagros and his mother, who lived with them. Joshua continued to decline both cognitively and functionally and needed assistance in all aspects of his life, including feeding, bathing, administering medications, and mobility. So, in July 2020, Milagros petitioned to establish legal guardianship over Joshua. In support of her petition, she declared that since Joshua's heart attack, he has "become mentally incapacitated and or mentally impaired . . . as that of a [five] year old child because a significant part of [his] brain has died and has been permanently damaged."

In March 2021, Dr. Joel Estrada conducted a follow-up neuropsychological evaluation of Joshua's "cognitive and functional status." Dr. Estrada noted that Joshua's

> performance reflected significant decline compared with results from 2016. The observed neuropsychological deficits are deemed to be due to the effects of the anoxic brain injury [Joshua] suffered in 2016 following his cardiac arrest. Given the extent and severity of his deficits he would be unable to manage his own affairs or even be able to meaningfully direct someone else to manage his affairs.

On April 30, 2021, the Pierce County Superior Court determined that Joshua "is an incapacitated person within the meaning of RCW Chapter 11.88" and appointed Milagros as full guardian of his estate and limited guardian of his person.

4

On May 18, 2022, Milagros, as guardian of Joshua and their minor son (collectively Moniz), sued Valley and the Kent Clinic (collectively Valley), alleging professional negligence and malpractice. On December 30, 2022, Valley moved for summary judgment dismissal of Moniz's claims as untimely. Moniz then moved for partial summary judgment, seeking a determination that their claims are timely because Joshua's incapacity tolled the statute of limitations.

After oral argument, the court denied Moniz's motion for summary judgment. It also denied Valley's summary judgment motion without prejudice, giving Valley leave to refile its motion that included deposition testimony or evidence related to when Milagros " 'discovered or reasonably should have discovered' " that Valley's acts or omissions caused Joshua's injury.

On April 12, 2023, Valley deposed Milagros. It then renewed its motion for summary judgment, arguing that Milagros knew Valley's act or omission caused Joshua's injury "all the way back in 2016" when Joshua suffered cardiac arrest. Or, "[a]t the very least, . . . as of July 22, 2020," when she sought legal guardianship. Valley argued that Milagros' testimony showed that the statute of limitations had run. In response, Moniz argued that Valley misconstrued the applicable statute of limitations, which was tolled because Joshua was incapacitated at the time his claim accrued.

On August 18, 2023, the trial court heard oral argument on the renewed motion and requested additional briefing. Then, on September 7, 2023, it denied Valley's renewed motion for summary judgment. The court determined that

> genuine issues of material fact preclude summary judgment. Under
> the standards that apply at the summary judgment stage, [Valley]

has not proved that [Moniz] commenced this lawsuit after the limitations period stated in RCW 4.16.350(3), and [Moniz] has not proved that the limitations period was tolled under RCW 4.16.190(1) (e.g., that at the time the cause of action accrued, Joshua . . . was incompetent or disabled). Instead, genuine issues remain for the trier of fact.

Valley moved for the trial court to certify the order denying summary judgment under RAP 2.3(b)(4). Moniz opposed the motion. The court granted Valley's motion, and a commissioner from this court granted discretionary review.

ANALYSIS

Valley argues the trial court erred by denying its motion for summary judgment. It contends undisputed evidence shows Moniz's claims are untimely. Moniz argues that Joshua's incapacity tolled the statute of limitations and that genuine issues of material fact remain about whether and when Joshua regained capacity. We agree with Moniz.

We review orders on summary judgment de novo. *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). The moving party has the initial burden to show there is no genuine issue of material fact. *Sherman v. Pfizer, Inc.*, 8 Wn. App. 2d 686, 694, 440 P.3d 1016 (2019). A defendant can meet this burden by showing no evidence supports an element of the plaintiff's case. *Id.* The burden then shifts to the plaintiff to present specific facts that rebut the defendant's contention and show a genuine issue of material fact exists. *Id.* A fact is material if it affects the outcome of the case. *Id.*; *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

We consider all facts submitted and draw all reasonable inferences from the facts in a light most favorable to the nonmoving party. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). If, viewing the facts in that light, a reasonable juror could find for the nonmoving party, we will not grant summary judgment. *Herron v. KING Broad. Co.*, 112 Wn.2d 762, 767-68, 775 P.2d 98 (1989). While ideally a statute of limitations defense should be decided pretrial, disputed facts relevant to the analysis must be resolved by the fact finder. *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 267-68, 189 P.3d 753 (2008).

Under RCW 4.16.350(3), health care professional negligence and malpractice causes of action

> shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his or her representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission.

The three-year limitation period in RCW 4.16.350(3) commences, or begins to run, from the date of the act or omission alleged to have caused the injury or condition. *Gunnier v. Yakima Heart Ctr., Inc.*, 134 Wn.2d 854, 864, 953 P.2d 1162 (1998).[4] The burden to show a claim is untimely under the statute of limitations lies with the defendant. CR 8(c); *see Haslund v. City of Seattle*, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976).

---

[4] As *Gunnier* observes, the three-year time period to file a lawsuit may lapse before a party discovers the injury caused by the negligent acts. 134 Wn.2d at 864. So, the statute also provides for an alternative limitations period, often called "the discovery rule." *See id.*; RCW 4.16.350(3). The alternate accrual time begins when a plaintiff discovers or should have discovered all the elements of their claim. RCW 4.16.350(3).

Under RCW 4.16.190, the statute of limitations for a claim tolls

> if a person entitled to bring an action mentioned in this chapter . . . be at the time the cause of action accrued either under the age of eighteen years or . . . incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings . . . as determined according to chapter 11.130 RCW.[5]

And under former RCW 11.88.010(1)(a) (2016),[6] a person is incapacitated if he shows "a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety."

If a plaintiff shows incapacity at the time his claim accrued, the tolling continues until such time that the plaintiff regains capacity. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 223-24, 770 P.2d 182 (1989). The plaintiff carries the burden to show that a statute of limitations is tolled. *Rivas*, 164 Wn.2d at 267.

Here, the three-year statute of limitations under RCW 4.16.350(3) commenced when Valley diagnosed Joshua on May 31 and June 9, 2016 because those were the acts or omissions alleged to have caused his injury. Moniz sued Valley in May 2022, almost six years after the three-year time period commenced. As a result, Moniz's claims are untimely unless she can show that the three-year time period was tolled.

---

[5] Chapter 11.130 RCW is the Uniform Guardianship, Conservatorship, and Other Protective Arrangements Act.

[6] In 2019 and 2020, the legislature repealed chapter 11.88 RCW and relocated the guardian act to chapter 11.130 RCW. LAWS OF 2019, ch. 437; LAWS OF 2020, ch. 312. In the process, it redefined incapacity. *See* RCW 11.130.265. But because former RCW 11.88.010 was in effect at the time Moniz's claim accrued, we look to the definition of incapacity under that statute.

To determine whether the three-year time period tolled under RCW 4.16.190, we must discern the date on which Moniz's cause of action accrued.  A cause of action generally accrues "when a party has the right to apply to a court for relief."  *Gunnier*, 134 Wn.2d at 859.  The elements of medical negligence are duty, breach, causation, and harm.  *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984).  While the diagnoses underlying Moniz's lawsuit occurred on June 9, 2016, Joshua was not harmed by those actions until he suffered cardiac arrest.  So, Moniz's causes of action accrued on July 31, 2016.[7]

Further, the record shows that on the date Moniz's causes of action accrued, Joshua arrived at the hospital with "concerning neurologic signs with decerebrate posturing" and "required significant sedation."  So, at that time, Joshua was incapacitated.[8]  Specifically, he could not understand the nature of the proceedings as shown by his inability to adequately provide for his nutrition, health, housing, or physical safety.  Joshua's incapacity tolled the three-year statutory time period.

Still, a statute of limitations is tolled only as long as the injured person remains incapacitated.  *Curtin v. City of E. Wenatchee*, 12 Wn. App. 2d 218, 225, 457 P.3d 470 (2020).  And Valley argues that Dr. Lloyd's September 27, 2016

---

[7] Valley argues Moniz's causes of action accrued on June 9, 2016, the same date the three-year statute of limitations commenced.  But, as explained above, the determination of a commencement date under the statute of limitations is a separate question from when a claim accrues.

[8] Valley conceded at oral argument that the evidence shows Joshua was incapacitated on July 31, 2016.  Wash. Ct. of App. oral argument, *Moniz v. King County Pub. Hosp. Dist. No. 1*, No. 85853-0-I (Mar. 4, 2025), at 5 min., 20 sec. (on file with court).

9

evaluation shows Joshua regained capacity such that he could understand the " 'nature of the proceedings' " under RCW 4.16.190, lifting the toll on the three-year time period.

Dr. Lloyd administered his neuropsychological evaluation while Joshua was still in inpatient rehab. He noted that Joshua knew he was in the hospital because of a heart attack, "correctly recounted the event's date," and was "capable of making decisions independently." Indeed, Dr. Lloyd found that Joshua's thought process was linear and coherent, his insight and awareness appeared fair, and his effort and motivation appeared adequate. And that from a "purely cognitive perspective," Joshua would not need 24-hour supervision.

But Dr. Lloyd's evaluation also noted that Joshua had slowed speech, slow processing, and memory problems. And Dr. Lloyd recommended Joshua go to outpatient cognitive rehabilitation to focus on his processing speed and attention abilities. Dr. Lloyd also stated that "given his slow processing," Joshua "should not be left alone for extended periods of time." And that Joshua "will not be able to return to work or resume driving in the foreseeable future" and should apply for Social Security disability.

Milagros' July 2020 declaration in support of her petition for guardianship also suggests that Joshua remained incapacitated. In her declaration, Milagros states that after his cardiac arrest, Joshua became "mentally incapacitated and or mentally impaired . . . as that of a 5 year old child," and that he continued to

function that way "up to the present."[9]

These genuine issues of material fact preclude summary judgment. A fact finder must decide whether and when Joshua regained capacity. The trial court can then determine the number of days from the time the three-year statute of limitations commenced to the time Moniz filed the lawsuit. And it can subtract the number of days the statute of limitations was tolled by Joshua's incapacity to determine whether Moniz's lawsuit is timely.[10]

Because genuine issues of material fact remain as to whether and when Joshua regained capacity, we affirm the trial court's order denying summary judgment and remand for further proceedings.

_____, ACJ

WE CONCUR:

_____          _____
Birk, J.                          Mann, J.

---

[9] Valley argues Milagros's declaration amounts to an unqualified expert opinion. But Valley did not object to her declaration below. And if a party fails to object or bring a motion to strike deficiencies in affidavits or other documents in support of a motion for summary judgment, the party waives those defects. *Bonneville v. Pierce County*, 148 Wn. App. 500, 509, 202 P.2d 309 (2008).

[10] The parties dispute how the discovery rule might apply here. But under RCW 4.16.190, the three-year statute of limitations was tolled as of July 31, 2016. So, if a jury determines that Joshua regained capacity, the remaining time under the three-year rule would expire later than the one-year time period under the discovery rule. *See* RCW 4.16.350(3). As a result, the three-year time period would apply. *See id.*